UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
DINO ANTOLINI,

                                         Plaintiff,                          Case No. 19-cv-07645

                    -against-


BARBARA NIEVES, 195 10TH AVE, LLC,
GASPARE VILLA, ANNA DASILVA
and SONNY LOU, INC.,
                                         Defendants.
-------------------------------------------------------------------------X


**DEFENDANT BARBARA NIEVES, 195 10TH AVE, LLC, GASPARE VILLA, ANNA
DASILVA AND SONNY LOU, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
<u>THEIR MOTION FOR SUMMARY JUDGMENT</u>**


FASULO BRAVERMAN & DIMAGGIO, LLP
Michael Giordano, Esq.
225 Broadway, Suite 715
New York, New York 10007
(212)566-6213

## Table of Contents

**PRELIMINARY STATEMENT** ................................................................. **1**

**LEGAL STANDARD** ............................................................................ **6**

**ARGUEMENT** .................................................................................... **7**

    **POINT ONE:** **PLAINTIFF DOES NOT HAVE STANDING TO
BRING THIS ACTION** ...................................................................... **8**

    **POINT TWO:** **THERE EXISTS NO GENUINE ISSUES OF FACT
AS TO PLAINTIFF'S ALLEGED ADA VIOLATIONS** ............................ **11**

        A.   Plaintiff cannot meet his burden of production that  a fixed,
permanent ADA accessible ramp is readily achievable ............................. 11

        B.   There is no genuine issue of fact that the installation of a
ramp is not readily achievable ................................................. 13

        C.   Construction of a permanent ramp remains impossible
even under a 'maximum extent feasible' theory of
discrimination .................................................................. 17

    **POINT THREE:** **ALL REMAINING CLAIMS ALSO FAIL** ........................... **18**

        A.   Plaintiff's NYS and NYC civil rights claims fail because he
has not made a *prima facie* case, or if he has, Defendants
have rebutted it ................................................................. 18

        B.   Plaintiff's negligence claim should be dismissed because
a negligence claim cannot be based purely on an ADA violation ................. 19

**CONCLUSION** .................................................................................. **20**

**Table of Authorities**

**Cases**

Access 4 All, Inc. v. Trump Int'l Hotel and Tower Condo., 468 F.Supp.2d 160,177 (SDNY 2006) .................................................................................................................. 8, 10

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986).................................................... 6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). ........................................................ 6

Borkowski v. Vallev Central School Dist., 63 F.3d 131 (2d Cir. 1995)....................................... 11

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ..................................................................... 6

Disabled in Action of Metro, N.Y. v. Trump Int'l Hotel and Tower, No. 01-cv-5518, 2003 U.S. Dist. LEXIS 5145 at *7 (SDNY Apr. 1, 2003) ............................................................... 9

Field Day, LLC v. County of Suffolk, 463 F.3d 167 (2d Cir. 2006) .............................................. 8

First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968).................... 6

Kemp v. Metro-North R.R., 316 F. App'x 25, 26 (2d Cir. 2009)................................................. 18

Kreisler v. Humane Society of N.Y, No. 16-CV-8177, 218 U.S. Dist. Lexis 171147, *5 (SDNY Oct. 3, 2018). ..................................................................................................... 6

Kreisler v. Second Ave. Diner Coro., No. 10-cv-7592, 2012 U.S. Dist. LEXIS 129298, at *7 (S.D.N.Y. Sept. 11, 2012)...................................................................................... 11, 12

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) ........................................................... 8

Lyons v. City of Los Angeles, 461 U.S. 95, 101-02 (1983) ........................................................... 8

Range v. 230 W. 41st, LLC, No. 19-cv-149, 2020 U.S. Dist. LEXIS 99045 (SDNY June 5, 2020) .................................................................................................................................. 17

Roberts v. Royal Atlantic Corp., 542 F.3d 363, 368 (2d Cir. 2008)..................................... passim

Thomas v. West, 242 F.Supp.3d 293, 298 (SDNY 2017) ....................................................... 6, 19

Vinokur v. Sovereign Bank, 701 F.Supp.2d 276, 290 (EDNY 2010) ......................................... 18

Weinstock v. Columbia Univ., 224 F.3d 33, 42, n. 1 (2d Cir. 2000)............................................ 18

Young v. Kali Hospitality Ltd., No. 07-cv-395, 2010 U.S. Dist. LEXIS 77637, at *8 (S.D. Ohio Aug. 2, 2010) ..................................................................................................... 11

**Statutes**

42 U.S.C. § 12181(9) ................................................................................................ 8, 16

42 U.S.C. § 12182(a) ..................................................................................................... 7

42 U.S.C. § 12183(a)(2) ........................................................................................... 7, 17

42 U.S.C. 12182(b)(2)(A)(iv) ......................................................................................... 8

**Rules**

Fed. R. Civ. P. 56(c) ...................................................................................................... 6

**Regulations**

28 C.F.R. § 36.402(b)(1) ............................................................................................. 17

28 C.F.R. § 36.402(c) ........................................................................................... 7, 8, 17

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of Defendant Barbara Nieves, 195 10th Ave, LLC, Anna DaSilva, Gaspare Villa and Sonny Lou, Inc.'s motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

This is an action for injunctive relief and damages stemming from alleged violations of Title III of the Americans with Disabilities Act and other state and common law claims.

Defendants operate a small business restaurant in the West Chelsea neighborhood of Manhattan. Plaintiff contends that he is disabled and that he was denied access to the restaurant in or about "August 2019." See Exhibit A (Complaint dated Aug. 15, 2019) at ¶ 19. Discovery has revealed that interior of Defendants' restaurant is fully compliant with the standards of the ADA. The only remaining allegation is with regard to a raised curb at the main entryway of the restaurant. It is, however, uncontested that converting the curb to a fixed, permanent, ADA-complaint ramp would be illegal. Thus, removal of the alleged barrier is not readily achievable, and the restaurant is ADA compliant to the maximum extent feasible. Further, the restaurant has provided an ADA compliant solution, which has been in place since the restaurant opened in November 2016.

## Background

Defendant 195 10th Ave, LLC ("195 10th Ave") owns a mixed-use building located at 195 10th Avenue, New York, New York. Defendant 195 10th Ave leases the ground floor commercial unit (the "Premises") to Defendant Sonny Lou, Inc. ("Sonny Lou") who operates a restaurant commonly known as "Pepe Giallo."

Sonny Lou began leasing the Premises on March 15, 2016, pursuant to a written lease agreement. See Declaration of Gaspare Villa ("Villa Dec.") at 1. Upon opening the restaurant, Sonny Lou ensured that the entirety of the restaurant was ADA compliant or otherwise accessible

1

to persons with disabilities. To this end, the restaurant has properly distanced walkways and turning points, sufficient ADA accessible seating areas, and an ADA compliant restroom, among other things. See Villa Dec.  ¶ 8.

With regard to the front entryway, Sonny Lou posted "handicap accessible" signage at the front doorway along with a doorbell and instructions for patrons in need of assistance to ring the bell. The bell immediately alerts staff members that assistance is needed. The signage, bell and instructions were installed when the restaurant first opened in approximately November 2016. Id. ¶ 10. The bell is visible in a photograph attached as an exhibit to Plaintiff's Complaint. See Exhibit A at 20. Most important, Defendants have a movable temporary ramp used as needed for patrons to enter the interior of the restaurant.

When a patron rings the doorbell, a staff member is immediately notified and will meet the patron at the front of the restaurant. The staff member may (1) offer the patron a menu for take-away dining, (2) seat the patron at one of our ADA accessible outdoor seating areas (seasonal), or (3) place the movable wheelchair ramp at the front entryway platform for the patron to access the inside of the restaurant. See Villa Dec. ¶ 11.

Furthermore, Sonny Lou offers seasonal outdoor seating at the front sidewalk of the restaurant. Sonny Lou is permitted to seat up to 12 patrons at 4 to 6 outdoor tables. According to the DOB permit, Sonny Lou may assemble no more than 3 side-by-side tables at each side of the front entryway. [See Declaration of Demetry, Exhibit B at 7].  Sonny Lou ensures it keeps a sufficient number of ADA accessible outdoor tables when outdoor dining is offered. Id. ¶ 12.

Plaintiff's expert concedes that the interior of the restaurant is fully ADA compliant. With regard to the front entryway, Plaintiff's expert contends that the curb is not ADA compliant, but

does not opine as to whether the temporary ramp is ADA compliant and sufficient, and offers nothing as to a readily achievable removal of the alleged barrier.

Conversely, Defendants' expert demonstrates conclusively, and without opposition in the record, that the installation of a permanent ramp is not "readily achievable" and that all alternatives are technically infeasible as they would violate either New York City Building Code or Fire Code, or Department of Transportation regulations, among others. See Exhibit B (Verified Answer dated Oct. 15, 2019); See Declaration of Hany Demerty (Defendants' Expert Witness) ("Demetry Dec.") annexed hereto, and Hany Demetery's Expert Report dated Jan. 14, 2021 at Exhibit B therein. Defendants' expert concludes that a permanent ADA fixed, permanent wheelchair accessible ramp at the front entryway is not only "not readily achievable," but would be in fact *illegal*. Finally, Defendants' expert finds that the currently used movable ramp and doorbell configuration is the only feasible alternative. See Demetry Dec. ¶ 29.  Plaintiff offers nothing in opposition to Defendants' expert's conclusion on this point. Thus, there is no genuine issue as to whether the removal of the alleged barrier is "readily achievable," nor is there a genuine issue as to whether the restaurant is ADA compliant to the maximum extent feasible.

## Expert Discovery

On November 30, 2020, Plaintiff's expert witness, Mr. Billy Chen, R.A. conducted a survey of Premises. Mr. Chen's survey consisted of walking around the front façade of the Premises and the interior public dining area of the restaurant. Defendants Anna DaSilva and Gaspare Villa were present for the entirety of Mr. Chen's survey. The purpose of Mr. Chen's survey was to determine whether the restaurant was compliant with the standards of the ADA, and, if not, to determine whether it was either ADA compliant to the maximum extent feasible or whether removal of any alleged barrier was readily achievable. Most notably, however, Mr. Chen

did not take a single measurement of any area of both the interior and exterior of the restaurant. See Villa Dec. ¶¶ 26-28; see Exhibit G (Expert Report of Billy Chen dated Dec. 10, 2020) (the "Chen Report"). This is conceded by Mr. Chen as his own report makes no reference whatsoever to steps taken regarding measurements. See Exhibit G ("the survey consisted of walking around the front façade of the restaurant and the interior public dining area of the restaurant").

Following his survey, Mr. Chen generated a report concluding that "the only major ADA issue would be the entry into the space," and "the only other minor issue would [be] the door sill going into the rear yard dining area." See Exhibit G at 3. The Chen report does not contain any reference whatsoever to whether a fixed, permanent, ADA-compliant wheelchair accessible ramp would be legally permissible, neverminded "readily achievable." It does not include proposed drawings or even a proposed description how a fixed, permanent ramp even could be designed.

On January 12, 2021, Defendants' expert, Mr. Hany Demetry, R.A., conducted his own survey of the Premises. On January 14, 2021, Mr. Demetry generated a detailed report as to why the installation of a fixed, permanent ADA complaint wheelchair ramp would create an illegal condition. See Demetry Dec., Exhibit B. Unlike Mr. Chen, Mr. Demetry took precise measurements of any and all relevant areas of the exterior of the Premises including, measurements of the points of egress, door sills, steps, platforms, sidewalks, curbs, ramps, sidewalk door hatch, seating area, distance to residential entrance, fire escape and landings, and foliage and trees, among other things, and took photographs of the same. Id. ¶ 16. Mr. Demetry annexed to his report *three* sets architectural drawings proposing different scenarios for how the ramp could be designed. Id. In each of the three scenarios, Mr. Demetry firmly concludes that there is no possible design of a fixed, permanent ADA compliant wheelchair ramp that would comport with the requirements of the NYC Building Code, Fire Code, or DOT regulations. Thus, there is categorically no issue of

4

genuine fact as to whether the installation of such a ramp is "readily achievable," and that Defendants' restaurant is ADA compliant to the maximum extent feasible.

Thus, there is no issue of genuine fact.

## LEGAL STANDARD

"Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." Thomas v. West, 242 F.Supp.3d 293, 298 (SDNY 2017) (citing Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986). "[A] party seeking summary judgment always bears the initial burden of responsibility of informing the district court of the basis for its motion," and identifying facts it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "When the movant has properly supported its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by 'citing to particular parts of materials in the record.'" Kreisler v. Humane Society of N.Y, No. 16-CV-8177, 218 U.S. Dist. Lexis 171147, *5 (SDNY Oct. 3, 2018).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must put forth "sufficient evidence supporting the claimed factual dispute [to] require a juror or judge to resolve the partis' differing versions of the truth at trial." First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968). The nonmoving party may not rest upon their allegations without any "significant probative evidence tending to support the complaint." Id. at 290. "A party may not rely on mere speculation or conjecture as to the truth of the nature of the facts to overcome a motion for summary judgment." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249 (citing Cities Services Co., at 288-89).

**ARGUEMENT**

Title III of the Americans with Disabilities Act ("ADA") "prohibits discrimination against individuals on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.'" Roberts v. Royal Atlantic Corp., 542 F.3d 363, 368 (2d Cir. 2008) (quoting 42 U.S.C. § 12182(a)).

To succeed on an alleged violation the plaintiff must "establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." Id.

With regard to the third prong, there are two standards to apply to determine whether discrimination occurred. See generally id. First, if the place of public accommodation was newly constructed and first occupied after January 25, 1993, or if it underwent renovations or alterations that affect usability after that date, then the issue for the fact finder is "whether the alteration was made readily accessible and usable to disabled individuals to the maximum extent feasible." Id. at 371 (citing 42 U.S.C. § 12183(a)(2). Pursuant to 28 C.F.R. § 36.402(c),

> The phrase 'to the maximum extent feasible' . . . applies to the occasional case where the nature of an existing facility makes it virtually impossible to comply fully with applicable accessibility standards through a planned alteration. In these circumstances, the alteration shall provide the maximum physical accessibility feasible. Any altered features of the facility that can be made accessible shall be made accessible. If providing accessibility in conformance with this section to individuals with certain disabilities (e.g., those who use wheelchairs) would not be feasible, the facility shall be made accessible to persons with other types of disabilities (e.g., those who use crutches, those who have impaired vision or hearing, or those who have other impairments).

The "'maximum extent feasible' requirement does not ask the court to make a judgment involving costs and benefits. Instead it requires accessibility except where providing it would be "virtually impossible" in light of the "nature of an existing facility." <u>Roberts</u>, 542 F.3d at 371 (<u>citing</u> 28 C.F.R. § 36.402(c).

If the place of public accommodation was constructed and occupied prior January 25, 1993 and has not underwent renovations or alterations that affect usability after that date, then the question for the fact finder is whether "such removal is readily achievable." Id. at 367 (<u>citing</u> 42 U.S.C. 12182(b)(2)(A)(iv). "Readily achievable" means "easily accomplishable and able to be carried out without much difficult or expense." 42 U.S.C. § 12181(9).

## <u>POINT ONE:</u>

## <u>PLAINTIFF DOES NOT HAVE STANDING TO</u><br><u>BRING THIS ACTION</u>

"Standing is an essential and unchanging component of the case-or-controversy requirement of Article III." <u>Access 4 All, Inc. v. Trump Int'l Hotel and Tower Condo.</u>, 468 F.Supp.2d 160,177 (SDNY 2006) (<u>citing</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). "There are three well-settled constitutional standing requirements: (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a casual connection between the injury and the defendant's conduct; and (3) the injury must be likely to be redressed by a favorable decision. <u>Id</u>. (<u>citing</u> <u>Field Day, LLC v. County of Suffolk</u>, 463 F.3d 167 (2d Cir. 2006). The Supreme Court has made clear that to "establish standing for an injunction, a plaintiff must not merely allege past injury, but also a risk of future harm." <u>Access 4 All, Inc.</u>, 468 F.Supp.2d at 168 (<u>citing</u> <u>Lyons v. City of Los Angeles</u>, 461 U.S. 95, 101-02 (1983). With regard to ADA claims, the Plaintiff must establish a "plausible intention or desire to return to the place

8

but for the barriers to access." Id. (citing Disabled in Action of Metro, N.Y. v. Trump Int'l Hotel and Tower, No. 01-cv-5518, 2003 U.S. Dist. LEXIS 5145 at *7 (SDNY Apr. 1, 2003).

With regard to the first prong, Plaintiff has not established that he suffered injury that is "concrete and particularized" and "actual or imminent." Access 4 All, Inc. 468 F.Supp.2d at 177.

Plaintiff alleges to have attempted to access the Premises alone sometime in "August 2019". See Exhibit A ¶ 17; see Exhibit D (Defendant's Demand for Interrogatories dated Nov. 18, 2019) at 1 (request for fact witness information); see Exhibit E (Plaintiff's Interrogatory Response dated Sept. 11, 2020) at 3 (listing only Plaintiff himself as a witness). There are no other witnesses to this alleged event.[1] Furthermore, Plaintiff's Complaint and Interrogatory Response is quite literally the *only* evidence of Plaintiff's alleged visit to the Premises. Defendants' discovery demands sought "all documents showing that Plaintiff traveled to the Property in question on the date in issue," including payment receipts for transpiration and EZ-Pass records. See Exhibit C. Defendants also sought all "notes, journals, or logs" regarding his alleged visit. Id. No documents have been produced to date and discovery is closed. See Exhibit F.

Second, the only alleged barrier Plaintiff encountered was at the front entryway. See Exhibit E ("[Plaintiff] was unable to gain access to the restaurant"). Thus, Plaintiff could not have experienced any other potential barrier to cause an injury.

Third, it is conceded by Plaintiff in his own Complaint that the "handicap accessible" signage, instructions and the doorbell were posted, installed and visible at the time Plaintiff alleges

---

[1] The complaint filed in this matter is substantively similar to the other 57 that he has filed in the SDNY and 8 in the EDNY in the last 5 years, some more so than others. (Compare, e.g., the complaint filed in this matter (Doc. No. 1), to the complaint in Antolini v. Gilbert, 19 CV 6578 (ER)(SLC), and the complaint filed in Antolini v. Lynne Kanter, et al., 19 CV 10567 (PGG)(RWL) which are both nearly verbatim the same as the complaint in this matter, down to formatting errors and typographic errors, suggesting that one complaint was literally copied into the next). In Antolini v. Gilbert, Paragraph 22 outlines the barriers at that establishment. It is verbatim the same as the alleged barriers at the subject property of the instant matter (paragraph 23, Antolini v. Nieves), and another property (paragraph 23, Antolini v. Kanter), notwithstanding these are three completely different buildings, in different parts of town, different styles of buildings, built at different times.

to have attempted to access the Premises. Indeed, the doorbell is visible in Exhibit A of Plaintiff's Complaint. See Exhibit A at 20; see Villa Dec. ¶¶ 10-14, Ex. B; see Demetry Dec. ¶ 18.

Fourth, it is uncontroverted that the installation of an ADA compliant fixed, permanent wheelchair accessible ramp would be illegal. See generally Demetry Dec. at Exhibit B; see generally Exhibit G (the Chen Report) (silent on the issue of legality of a fixed ramp). There is absolutely no evidence in the record to the contrary.

With these uncontested facts in mind, Plaintiff cannot possibly meet his burden of showing that a concrete, particularized and actual or imminent injury occurred. Access 4 All, Inc., 468 F.Supp.2d at 177. Assuming Plaintiff proves that he actually attempted to visit the Premises, Plaintiff cannot show that he suffered a concrete and particularized injury where the Premises was open with ADA compliant outdoor dining tables available to him (also pictured in Plaintiff's complaint at Exhibit A). Further, handicap accessible signage was clearly posted and visible to Plaintiff, as well as instructions to use the doorbell for assistance. As explained by Mr. Villa, Mr. Antolini would have surely encountered a restaurant staff member who could have and would have provided assistance. See Villa Dec. ¶¶ 19-22.

Finally, and most decisive, is the uncontroverted fact that a fixed ADA accessible ramp is factually and legally impossible to construct at the Premises.  See generally Demetry Dec. at Exhibit B; see generally Exhibit G (the Chen Report) (silent on the issue of legality of a fixed ramp). Thus, there is no possible, cognizable injury where the only "barrier" Plaintiff encountered is not possible to remedy.

With regard to the third prong – that the injury must be likely to be redressed by a favorable decision (Access 4 All, Inc., 468 F.Supp.2d at 177) – there exists no possible favorable decision to be redressed. Again, it is legally impossible to install a permanent ADA compliant ramp. See

generally Demetry Dec. at Exhibit B; see generally Exhibit G (the Chen Report) (silent on the issue of legality of a fixed ramp). Thus, Plaintiff cannot meet his burden of showing that a favorable decision (i.e., a finding that the installation of a permanent ramp is "readily achievable") would likely redress his injury.

Plaintiff cannot meet his burden of establishing standing to proceed on this claim. Accordingly, Defendants are entitled to summary judgment.

### POINT TWO:

### THERE EXISTS NO GENUINE ISSUES OF FACT AS TO PLAINTIFF'S ALLEGED ADA VIOLATIONS

A. *PLAINTIFF CANNOT MEET HIS BURDEN OF PRODUCTION THAT A FIXED, PERMANENT ADA ACCESSIBLE RAMP IS READILY ACHIEVABLE*

Title III claims in this Circuit, require the plaintiff to meet its initial burden of production by articulating a plausible proposal for the removal of a barrier, 'the cost of which, facially does not clearly exceed the benefit." Borkowski v. Valley Central School Dist., 63 F.3d 131 (2d Cir. 1995). See Roberts, 542 F.3d at 373.

Although a plaintiff's burden "is not a heavy one" (see Roberts, 542 F.3d at 370), "even the minimal burden of Roberts requires that a plaintiff must provide at least some estimate of costs." Kreisler v. Second Ave. Diner Corp., No. 10-cv-7592, 2012 U.S. Dist. LEXIS 129298, at *7 (S.D.N.Y. Sept. 11, 2012), aff'd, 784 F.3d 184 (2d Cir. 2013); see also Young v. Kali Hospitality Ltd., No. 07-cv-395, 2010 U.S. Dist. LEXIS 77637, at *8 (S.D. Ohio Aug. 2, 2010) ("Under even the test from the Second Circuit, however, a Title III plaintiff needs to provide some cost estimate and a proposal for barrier removal"). "Once the plaintiff has done this, she has made out a *prima facie* showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant." Roberts, 542 F.3d at 370 (citing Borkowski, 63 F.3d at 138). If the plaintiff

11

makes his *prima facie* showing, "the defendant may counter the plaintiffs showing by meeting its own burden of persuasion and establishing that the costs of plaintiffs proposal would in fact exceed the benefits." Roberts, 542 F.3d at 373. The Court explained that "[b]ecause the concept of 'readily achievable' is a broad one, either party may include in its analysis, as costs or benefits, both monetary and non-monetary considerations." Id. At 373.

Here, Plaintiff has not offered *any* proposal for the removal of the alleged barrier (that is, the installation of a fixed, permanent ramp ADA compliant wheelchair ramp), never mind a "plausible" proposal with "at least some estimate of cost." See Kreisler, 2012 U.S. Dist. LEXIS 129298 at *7. Plaintiff's Complaint merely alleges that "[t]here is an insurmountable step at the exterior side of the entrance door which has a change in level greater than 1/2 inch high," and that "defendants failed to provide that changes in level greater than 1/2 high are ramped." See Exhibit A.[2] Plaintiff's expert report merely states that "[t]here should be a handicap ramp on the exterior of the building." That is the entirety of the record on this issue and discovery is closed. Again, Plaintiff's expert took no measurements, nor offered proposed architectural drawings, nor offered even a bare description of a "plausible proposal" with an estimated proposed cost. Id.

Having not met his initial burden of offering any plausible proposal with at least some estimate of costs, Defendants are entitled to judgment as a matter of law.

---

[2] The Complaint alleges a total of nine barriers to entry throughout the Premises. As we now know, Plaintiff's own expert concedes that eight out of the nine are completely without merit. Thus, the only issue remaining is Plaintiff's second alleged barrier found at paragraph 22, subsection II of the Complaint.

### B. THERE IS NO GENUINE ISSUE OF FACT THAT THE INSTALLATION OF A RAMP IS NOT READILY ACHIEVABLE

Assuming, *arguendo*, that Plaintiff is able to meets its initial burden of production (which he cannot), Defendants have conclusively met its burden of persuasion that removal of the alleged barrier is not readily achievable. See Roberts, 542 F.3d at 373.

Defendants offer the sound, detailed and complete testimony of Mr. Hany Demetry, R.A. who concludes that "an ADA compliant wheelchair accessible ramp at the entryway is not possible at the Premises. Every scenario analyzed presents illegal, non-conforming conditions in violation of either the NYC Building Code, the Fire Code, DOT regulations, or the standards of the American with Disabilities Act." See Demetry Dec. ¶ 29, Exhibit B.

Mr. Demetry is a New York State registered a licensed architect and the chief directing principal of Sotir Associates, a New York City based architectural firm. See Demetry Dec. ¶ 1. Mr. Demetry has practiced in the field of architecture for over 20 years for a wide range of residential and commercial clients, including zoning and code analysis, architectural plans, ADA design and compliance retrofitting, and structural design, as well as all types of related filing and expediting with the New York City Department of Buildings (the "DOB"). Id. ¶ 2. In order to perform his job, Mr. Demetry is, and must be, familiar with the NYC Building Code, Fire Code, Zoning resolutions, rules of the Landmark Preservation Commission, rules of the Department of Transportation and the standards of the ADA. Id. ¶ 4.

Mr. Demetry was retained by Defendants to perform a survey of the Premises and present his findings as to whether the construction of a fixed, permanent ADA accessible ramp was achievable and feasible at the Premises. Id. ¶ 10.

On January 12, 2021, Mr. Demetry performed an inspection of the Premises. Following his inspection, he drafted a report compiling his findings and conclusions. See Demetry Dec, Exhibit

13

B. With regard to his survey of the exterior of the Premises, he inspected the entryway areas including the doorways, landings, sidewalk and curbs, grade, fire escape and ladder, cellar hatch door, and the immediate adjacent properties. He then captured photographs of the entryway, sidewalk, ramps, fire and escape ladder. He then took measurements of the points of egress, door sills, steps, platforms, sidewalks, curbs, ramps, sidewalk door hatch, seating area, distance to residential entrance, fire escape and landings, and foliage and trees, among other things. Id. ¶ 16.

Based on his survey, Mr. Demetry found that (1) the Premises restaurant space is raised 6 and 7/8 inches above the current sidewalk with concrete steps at the adjacent building projecting 21 inches onto the sidewalk, (2)  that is a 7'7" distance between the restaurant entryway and adjacent concrete step of the next-door school, which cannot be expanded, (3) a 14-foot tree with a tree-planting bed is located in front of the Premises at the edge of the sidewalk, and (4) immediately to the left of the restaurant entry is the cellar hatch door which is immovable. Id. ¶ 17. Mr. Demetry also observed a notification bell and clear signage at the front façade to provide a movable accessible ramp to the restaurant. Id. ¶¶ 18-19.

Mr. Demetry first analyzed whether an ADA compliant permanent wheelchair ramp is feasible under the existing entryway plan. Mr. Demetry offered in his report a proposed architectural drawing of the ramp under the existing entryway plan. Id., Exhibit B at 3. In analyzing this first proposal, Mr. Demetry found that,

> Pursuant to the ADA, a permanent platform landing for wheelchair accessibility is required to be 5'-0" x 5'-0," which would require an additional 2'-0" concrete platform added to the existing platform. The additional 2'-0" concrete platform would interfere and obstruct the fire escape landing for the residential units above. This would be a violation of egress and fire safety requirements of the NYC Building Code and Fire Code because a fire escape must land on a flat landing. Id. ¶ 21, Exhibit B at 3.

14

Thus, the installation of a permanent ADA compliant ramp is not readily achievable or feasible under the existing plan.

After concluding that an ADA compliant wheelchair assessable ramp was not legal under the existing entryway plan, Mr. Demetry then analyzed two possible alternative scenarios for the construction of an ADA compliant ramp. In Scenario #1, he analyzed whether an ADA compliant ramp was feasible by constructing the ramp and requisite platform directly from the entryway.

Under this schematic, the required ramp must be 7' in length to satisfy the 1:12 maximum slope for ADA ramps, in addition to the required 2'-0" additional platform required. However, the platform and ramp would create an illegal condition as it would still interfere and obstruct the fire escape landing, in violation of Building Code and Fire Code. Further, the ramp and required handrail would generate an illegal condition because the minimum clearance between the proposed ramp and tree and tree-bedding is 8' and the existing distance is less than 8'. This would in turn also violate regulations of the DOT. Id. ¶ 24, Exhibit B at 4. Thus, the installation of a permanent ADA compliant ramp is not readily achievable under Scenario #1.

Under Scenario #2, the ramp would be ending with less than 12" to the existing adjacent building concrete steps, which gives less than the required clearance for the wheelchair user to access the ramp. This further creates an obstruction coming from the restaurant to the street. Under this scenario, the platform is enlarged to accommodate the fire escape above, which makes the projection more than the "as of right" 44" sidewalk obstruction permitted by DOT and for ADA compliance. Furthermore, the restaurant would lose at least 4 seats of its outdoor seating as well as its permit for outdoor seating as it would not be possible to satisfy the DOT requirements for such a permit and services. See Id. ¶¶ 25-27.

15

Finally, in an effort to consider all possible alternatives, Mr. Demetry analyzed whether the proposed ramp in Scenario #2 could be constructed to the left of the entryway. He determined that a ramp to the left would result in the same illegal and non-conforming conditions as determined above. Additionally, a ramp to the left is not possible because of the existing immovable cellar hatch door. Id. ¶ 28, Exhibit B at 5. Thus, the installation of a permanent ADA compliant ramp is not readily achievable or feasible under Scenario #2 to either side of the entryway.

After exploring four different alternatives to the current bell and movable ramp accommodation, Mr. Demerty concluded that an ADA compliant wheelchair accessible ramp at the entryway is not possible at the Premises. Every scenario analyzed presents illegal, non-conforming conditions in violation of either the NYC Building Code, the Fire Code, DOT regulations, or the standards of the American with Disabilities Act. Id. at ¶ 29, Exhibit B.

Finally, it is notable that Plaintiff has not offered any evidence controverting or disputing the claims by Mr. Demetry and discovery is closed.

"Readily achievable" means "easily accomplishable and able to be carried out without much difficult or expense." 42 U.S.C. § 12181(9). The record is here is clear. A legally impossible construction is not "readily achieve." Plaintiff having offered no evidence to the contrary, there is no genuine issue of fact as to whether removal of the alleged barrier is "readily achievable."

C. *CONSTRUCTION OF A PERMANENT RAMP REMAINS IMPOSSIBLE EVEN UNDER A 'MAXIMUM EXTENT FEASIBLE' THEORY OF DISCRIMINATION*

If a building underwent renovations or alterations that affect usability after January 25, 1993, then the issue for the fact finder is "whether the alteration was made readily accessible and usable to disabled individuals to the maximum extent feasible." Roberts, 542 F.3d at 371 (citing 42 U.S.C. § 12183(a)(2). This Court has recently explained that,

> [t]he ADA's implementing regulations define the term "alteration" as "a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof." 28 C.F.R. § 36.402(b). Alterations include "remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangements in the plan configuration of walls and full-height partitions." 28 C.F.R. § 36.402(b)(1). The regulation goes on to explain that "[n]ormal maintenance, reroofing, painting or wallpapering, asbestos removal, or changes to the mechanical and electrical systems are not alterations unless they affect the usability of the building." Range v. 230 W. 41st, LLC, No. 19-cv-149, 2020 U.S. Dist. LEXIS 99045 (SDNY June 5, 2020) (citing 28 C.F.R. § 36.402(b)(1)).

The phrase 'to the maximum extent feasible' . . . applies to the occasional case where the nature of an existing facility makes it virtually impossible to comply fully with applicable accessibility standards through a planned alteration. See 28 C.F.R. § 36.402(c).

Assuming Plaintiff is able to meet his burden of proving the existence of an alteration as defined above (which he has not), there still exists no genuine issue of fact as to whether compliance with the ADA was made to the "maximum extent feasible."

It is again important to note that the interior of the restaurant is fully ADA compliant. Thus, the only remaining inquiry is on the narrow issue of whether such alteration was made to the maximum extent possible in compliance with the ADA.

17

The same analysis and conclusion applied above is applied here. And for the reasons discussed in Points B through D above, Defendants have conclusively established that is beyond 'virtually impossible' to fully comply with the standards of the ADA; it is *impossible* to construct a legal, ADA compliant fixed, permanent wheelchair ramp at the front entryway of the restaurant. See Roberts, 542 F.3d at 371.

Accordingly, even if Plaintiff is able to meet his burden on proving an alteration, there is no genuine dispute as to whether alterations, if any, were made to comply with the ADA to the maximum extent feasible.  As such, Defendants are entitled to summary judgment.

## POINT THREE:

### ALL REMAINING CLAIMS ALSO FAIL

*A.  PLAINTIFF'S NYS AND NYC CIVIL RIGHTS CLAIMS FAIL BECAUSE HE HAS NOT MADE A PRIMA FACIE CASE, OR IF HE HAS, DEFENDANTS HAVE REBUTTED IT*

Plaintiff also brings claims under the New York State and City Human Rights Law, Executive Law and Administrative Code. See Exhibit A. The Second Circuit analyzes "claims under the NYSHRL using the same standards that apply to federal civil rights statutes such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the ADA. Kemp v. Metro-North R.R., 316 F. App'x 25, 26 (2d Cir. 2009) (citing Weinstock v. Columbia Univ., 224 F.3d 33, 42, n. 1 (2d Cir. 2000).

Although there is a "uniquely broad" standard applied under the New York City Human Right Law, a plaintiff still has the initial burden of establishing a *prima facie* case. Vinokur v. Sovereign Bank, 701 F.Supp.2d 276, 290 (EDNY 2010).

18

None of the this of course changes the analysis as to whether Plaintiff has met his initial burden of production with regard to the proposal of a "readily achievable" removal of the alleged barrier. No matter how liberally construed, Plaintiff fails to offer *any* proposal for the removal of the alleged barrier. Thus, he has not satisfied any burden. More important, it still remains impossible for Defendants to install a legal, ADA conforming wheelchair ramp at the front entrance of the restaurant. Thus, for the same reasons as cited above, the state law claims should be dismissed.

*B.   PLAINTIFF'S   NEGLIGENCE   CLAIM   SHOULD   BE   DISMISSED BECAUSE A NEGLIGENCE CLAIM CANNOT BE BASED PURELY ON AN ADA VIOLATION*

Plaintiff also asserts a claim for common law negligence. "Although the Americans with Disabilities Act of 1990, 42 U.S.C.S. § 12181 et seq., does not preempt state common-law causes of action, a plaintiff may not establish a common-law negligence claim based purely on a failure to design a place of public accommodation in accordance with federal or state statutes, absent further injury." Thomas v. West, 242 F.Supp.3d 293, 295 (SDNY 2017). Here, Plaintiff negligence claim is solely premised on a failure to design the Premises in accordance with federal or state statutes. Therefore, it should be dismissed.

## <u>CONCLUSION</u>

Wherefore, Defendants respectfully request summary judgment be granted, together with other and further relief as may be deemed just and proper.

Dated:          March 1, 2021

FASULO BRAVERMAN & DIMAGGIO, LLP

By:    <u>  /s/ Michael Giordano          </u>
Michael Giordano
225 Broadway, Suite 715
New York, New York 10007
(212)566-6213
*MGiordano@FBDMLaw.com*

*Counsel for Defendants Barbara Nieves, 195 10th Ave LLC, Gaspare Villa, Anna DaSilva and Sonny Lou, Inc.*