UNITED STATES DISTRICT COURT
SOUTHERNDISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DINO ANTOLINI,                                  :   Case No.: 1:19-cv-07645

                                                :

                          Plaintiff,            :

                                                :

        - against -                             :

                                                :

                                                :

ROMAN NIEVES, BARBRA NIEVES, 195                :
10TH AVENUE LLC, GASPARE VILLA,
ANNA DA SILVA, and SONNY LOU INC.,

                                                :

                                                :

                                                :

                          Defendants.           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**Hon. Vernon S. Broderick**

PLAINTIFF'S MEMORANDUM
OF LAW IN OPPOSITION TO
DEFENDANTS MOTION FOR
SUMMARY JUDGMENT

Stuart H. Finkelstein Esq.

Finkelstein Law Group

Attorney for Plaintiff

338 Jericho Turnpike

Syosset, New York

11791 Telephone:

(718) 261-4900

Finkelsteinlawgroup@gmail.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.......................................................... 2,3

PRELIMINARY STATEMENT ...................................................... 4

I.      PLAINTIFF HAS STANDING………………………………………….5

II.     SUMMARY JUDGMENT IS INAPPROPRIATE AND
        DEFENDANTS MUST BRING THEIR FACILITY INTO
        ADA COMPLIANCE .........................................……………9

        A.      Plaintiff has met his burden.................................................11
        B.      The repairs can and must be made  ..................................14

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

<u>Access 4 All, Inc. v. Trump Intern. Hotel</u>, 458 F.Supp.2d 160 (S.D.N.Y. 2006)…………………4

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)…
…………………………………………………………………………………………10

<u>Borkowski v. Valley Central School District</u>, 63 F. 3d 131 (2d Cir. 1995)
…………………………………………………………………………………………11

<u>Brown v. County of Nassau,</u> 736 F. Supp. 2d  620 (E.D.N.Y. 2010)
…………………………………………………………………………………………22

<u>Brown v. Mermaid Plaza Associates LLC</u>, 2018 WL 2722454 (E.D.N.Y. 2018)
…………………………………………………………………………………………8, 18

<u>Disabled in Action v. Trump Int'l Hotel & Tower</u>, WL 1751785, (S.D.N.Y. Apr. 2, 2003)………6

<u>Dollman v. Mast Indus.</u>, Inc., 2011 WL 3911035, at *2 (S.D.N.Y. Sept. 6, 2011)………..……….11

<u>Francis v. Amwest Realty Associates, LLC</u>, 15-cv-9066 (S.D.N.Y. 2017)………………………..11

<u>Gropper v. Fine Arts Housing, Inc.</u>, 12 F. Supp. 3d 664, 670 (S.D.N.Y. Apr. 3, 2014)…………..16

<u>Harty v. Spring Valley Marketplace LLC</u>, (S.D.N.Y. Jan. 9, 2017)………………………….7

<u>Kreisler v. Humane Society of New York</u>, 2018 WL 4778914 (S.D.N.Y. Oct. 3, 2018)…
…………………………………………………………………………………………12,17

Kreisler v. Second Ave. Diner Corp., 2012 WL 3961304 (S.D.N.Y. Sep. 11, 2012) (aff'd 731 F.3d 184 (2d Cir. 2013))……………………………………………………………………………..6,11

Roberts v. Royal Atlantic Corp., 542 F. 3d 363 (2d Cir. 2008) ……………………………………………………………………………………………………. 9

Rosa v. 600 Broadway Partners, 175 F. Supp. 3d 191, 206 (S.D.N.Y. 2016). ……………………………………………………………………………………………… 15

Sutton v. 626 Emmut Properties, Ltd., 2019 WL 3531564 (S.D.N.Y. Aug. 2, 2019)……………..8, 18

Wolters Kluwer Fin. Servs. Inc. v. Scivantage, 2007 WL 1098714 (S.D.N.Y. 2007)…………..15

W.R. Huff Asset Mgmt., v. Deloitte & Touche, 549 F.3d 100, 106–07 (2d Cir. 2008)…………..9

Victory v. Hewlett–Packard Co., 34 F.Supp.2d 809, 824 (E.D.N.Y. 1999)………………………17

**Statutes**

28 U.S.C. § 1331 ............................................................................................................... 1

28 U.S.C. § 1291…………………………………………………………………………..1

29 U.S.C. § 2102……..………………………………………………………………………4

**Rules**

Fed. R. Civ. P. 56.............................................................................................................4

## PRELIMINARY STATEMENT

Plaintiff submits this memorandum of law in opposition to defendants' motion for summary judgment and for other improper relief pursuant to Rule 56 of the Federal Rules of

Civil Procedure and Individual Rule 4(F) of the Honorable Judge Broderick's Individual Rules

of Practice. Plaintiff respectfully asks this Court to deny defendant's motion for Summary

Judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure because there exist

multiple genuine disputes of fact such that this case must proceed to trial.

## INTRODUCTION

In defendant's memorandum of law in support of their motion for summary judgment,

(hereinafter 'MSJ,') Defendants argue that summary judgement is appropriate because 1)

Plaintiff does not have standing; 2) because Plaintiff has not met his burden of production for

ADA architectural repairs; 3) wheelchair ramp installation and other repairs cannot be

effectuated. Contrary to defendants' assertions, Plaintiff clearly has standing as a disabled

individual living extremely close to the subject facility with an intent to return. Plaintiff has met

his minimal burden of production through the submission of detailed expert materials. And the

repairs at issue are indeed readily achievable. All of defendant's arguments fail and summary

judgment must be denied in toto so that this case can finally be placed on the trial calendar.

## I.     PLAINTIFF HAS STANDING

Plaintiff has standing. Standing is essential and is an unchanging component of  the  case-

or-controversy requirement of Article III of the Constitution. Access 4 All, Inc. v. Trump Int'l

Hotel and Tower Condo., 468 F.Supp.2d 160,177 (SDNY 2006) (citing Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560 (1992). The three well-settled constitutional standing requirements:

(1) injury in fact, which  must be (a) concrete and particularized, and (b) actual or imminent; (2)

a causal connection between the injury and the defendant's conduct; and (3) the injury must be likely to be redressed by a favorable decision. Id. (citing Field Day, LLC v. County of Suffolk, 463 F.3d 167 (2d Cir. 2006). To defeat a defendant's motion for summary judgment, Plaintiff must establish that there is a genuine question of material fact as to the standing elements. Natural Resources Defense Council v. Bodine, 471 F.Supp.3d 524 (S.D.N.Y. 2020) (citing Access 4 All Inc. v. Trump Int'l Hotel & Condo., 458 F. Supp. 2d 160, 167 (S.D.N.Y. 2006) (denying summary judgment: "there is a material issue of fact regarding this element of [plaintiff's] standing, and summary judgment is inappropriate"). On an ADA Title III claim, Plaintiff must therefore establish a "plausible intention or desire to return to the place of public accommodation at issue.  The Second Circuit has held that a plaintiff can show **standing** in the context of the ADA where: (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [property] to plaintiff's home, that plaintiff intended to return to the subject location. Heard v. Statue Cruises, WL 2779710 (S.D.N.Y. June 26, 2017) (*quoting* Disabled in Action of Metro N.Y. v. Trump Int'l Hotel & Tower, 2003 WL 1751785, at *7 (S.D.N.Y. Apr. 2, 2003) ("Courts considering ADA claims have found that disabled plaintiffs who had encountered barriers at restaurants, stores, [etc.] prior to filing their complaints have standing to bring claims for injunctive relief if they show a plausible intention or desire to return to the place but for the barriers to access.")

Defendants make four incorrect arguments concerning standing, all of which are factually incorrect and legally nonsensical. *First*, defendants argue that "Plaintiff has not established that he suffered injury that is"concrete and particularized" and "actual or imminent" because

defendants do not feel that they are in possession of enough proof that Plaintiff was discriminated upon when he could not gain access to defendants' subject facility. MSJ at 9. Defendants basically argue that a) no one witnessed defendant's discrimination upon Plaintiff through his unsuccessful attempt to access the facility; and b) that defendants do not have enough proof positive to their liking to confirm the discrimination because they conducted discovery ineffectively. Id. However, both of these self-invented litmus tests are all self-concocted and have no bearing on what the law actually is, which probably explains why there is no authority at all used to support these points. Plaintiff visited the subject facility in August of 2019. (Compl. at ¶ 17; Ex. B Antolini Dec. ¶ 8). Plaintiff was unable to gain access to the interior of the facility because the entrance to the restaurant has a large concrete barrier upwards of half a foot that makes travel via wheelchair through the front door impossible. (Compl. at ¶ 17; Ex. B Antolini Dec. ¶ 9; Chen Dec. ¶ 7.) Plaintiff has been disabled for decades. (Ex. B Antolini Dec. ¶ 4.) Plaintiff lives very close to the subject facility and enjoys the type of food served a great deal. (Ex. B Antolini Dec. ¶ 12-14.) Defendants did not take Plaintiff's deposition, pointing only to their ineffective advocacy and not to the discrimination at their facility. Plaintiff has suffered a past particularized injury and his clear intent to return, but for the ongoing discrimination by defendants, clearly satisfies the first standing prong. See Heard v. Statue Cruises, WL 2779710 (S.D.N.Y. June 26, 2017) (citing Disabled in Action of Metro N.Y. v. Trump Int'l Hotel & Tower, 2003 WL 1751785, at *7 (S.D.N.Y. Apr. 2, 2003).

Defendants *second* argument regarding standing is that "the only alleged barrier Plaintiff encountered was at the front entryway and thus, Plaintiff could not have experienced any other potential barrier to cause an injury." MSJ at 9. Defendants should be admonished for submitting such facially incorrect contentions to this Court, as even the most cursory of legal

research shows that such a position has been rebuffed in this circuit *for nearly a decade*. *See* Kreisler v. Second Ave. Diner Corp., 731 F.3d 184 (2d Cir. 2013). "Once a plaintiff establishes standing with respect to one barrier in a place of public accommodation, that plaintiff may bring ADA challenges with respect to all other barriers on the premises that affect the plaintiff's particular disability." Kreisler, 731 F.3d at 188. The Second Circuit quite literally codified this principle with great clarity: "In the context of the ADA, the fact that the wheelchair-inaccessible entrance deterred [Plaintiff] from accessing the [subject facility] Diner established a concrete and particularized injury; Plaintiff need not attempt to overcome an obvious barrier and because Plaintiff has standing to pursue injunctive relief as to the facility's entrance, he has standing to seek removal of all barriers inside the facility related to his disability that he would likely encounter were he able to access the facility." Id. As detailed, Plaintiff attempted to gain access to the restaurant in August 2019. (Compl. ¶ 17-20; Ex. B Antolini Dec. ¶ 8.) He could not gain entry because of the insurmountable barrier. Ex. B Antolini Dec. ¶ 8-9.) To make matters worse, there was no one outside to even help him gain entry or for him to complain to. (Ex. B Antolini Dec. ¶ 9-10.) Defendants do not seem to care about their own discrimination. The Second Circuit thus confers standing on Plaintiff to sue for all barriers and defendant's argument to the contrary is the epitome of bad faith.

Defendants *third* argument as to standing is that "it is conceded by Plaintiff in his own Complaint that the "handicap accessible" signage, instructions and the doorbell were visible and usable at the time" Plaintiff visited the facility and because of this "Plaintiff cannot show that there is a concrete, particularized and actual or imminent, injury." MSJ at 9-10, 13. But in fact, Plaintiff has made no such concession and there is clearly no accessibility signage visible in Plaintiff's Complaint. *See* Compl. at 20 (showing pictures of restaurant exterior from

August 2019, no 'handicapped accessible' materials visible what so ever). Even if defendants

could point to any proof positive other than the restaurant owner's own self-serving

declaration(s) that the defendants have some policy attempting to aid disabled customers, it

bears naught on the issue of  an 'injury in fact' because the existence of architectural barriers

that hinder entry into a place of public accommodations means that. Plaintiff has suffered an

injury in fact in this context. Harty v. Spring Valley Marketplace LLC, 2017 WL 108062

(S.D.N.Y. Jan. 9, 2017). Further, Sutton v. 626 Emmut Properties, Ltd., 2019 WL 3531564

(S.D.N.Y. Aug. 2, 2019) is instructive. The defendants in Sutton attempted to use the same "no

injury" contention, but Judge Oetken, guided by Kreisler (2013), quickly dispensed of the

argument. Id. at 2. The defendants argued that the wheelchair bound plaintiff (Sutton) failed to

demonstrate standing because he failed to show that he has been injured by the architectural

barriers. Id. The defendants maintained that because Sutton simply "stat[ed] a list of alleged

ADA violations at the restaurant" without offering evidence that any of them impeded his own

access, there was no injury in fact. Id.  The court ruled that the "defendants' standing argument

[is] foreclosed by the Second Circuit's

in Kreisler v. Second Avenue Diner Corp., 731 F.3d 184 (2d Cir. 2013). The court found that

just like in Kreisler, the plaintiff, Sutton had provided sworn statements that he has been unable

to enter an establishment due to "an exterior step, that he dines at restaurants near the

establishment, that the establishment is in his neighborhood, and that he would visit the

establishment if it were accessible. (Sutton Decl. ¶ 5–11, 18)." Id. The court explained that the

testimony was sufficient at the summary judgment stage to establish Sutton's injury as to confer

standing to seek injunctive relief under the ADA with respect to all architectural access barriers.

Id. Similarly, in Brown v. Mermaid Plaza Associates LLC, 2018 WL 2722454 (E.D.N.Y. 2018),

the court denied a standing challenge where the defendant plaza argued that the plaintiff did not have standing because he was not 'actually deterred' by the architectural barriers alleged" Id. at 6. The court held that the plaintiff personally encountered the architectural barriers and had thus established standing. Id. The court further noted that even where the Plaza offered "side ramps" the plaintiff found great "awkwardness" and "difficulty" for her to use and "get up" on the ramps and that was sufficient to establish a personalized injury in fact. Id; see also Kreisler v. Second Avenue Diner Corp., 731 F.3d 184 (2d Cir. 2013) (prior existence of buzzer and portable ramp insufficient to negate standing because restaurant inaccessible to wheelchair users). Plaintiff could not enter the restaurant . Defendants again offer no legal analysis of their own, probably for good reason.

　　　Defendants *fourth* standing argument, which is not actually a 'standing' argument at all, is that "it is uncontroverted that the installation of an ADA compliant fixed, permanent wheelchair accessible ramp would be illegal" and thus, Plaintiff does not have any '*redressability*' as is necessary to meet the third prong of standing. MSJ at 10-11; Access 4 All, Inc., 468 F.Supp.2d at 168. First, defendants repeated argument that "wheelchair installation would be illegal" is wholly incorrect and will be addressed below. Second, defendants fundamentally misunderstand what is means for an injury to be 'redressable' in the standing context. *See* Lujan, 504 U.S. at 590; W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 106–07 (2d Cir. 2008). The redressability requirement is satisfied where it is likely that the plaintiff will "benefit in a tangible way from the court's intervention." Id. (quoting Warth, 422 U.S. at 508. This standard does not require certainty. *See* Mhany Mgmt, Inc. v. Cnty of Nassau, 819 F.3d 581, 601-602 (2d Cir. 2016) (Redressability is not a demand for mathematical certainty and in the context of an injunctive

relief, removal of barrier to secure relief need not be certain.) (internal quotations omitted); *see also* Huntington Branch, N.A.A.C.P. v. Town of Huntington N.Y., 689 F.2d 391, 394 (2d Cir. 1982) ("[T]he requirement that the relief requested, if granted, be likely to redress the injuries alleged ... is not a demand for certainty.... To ask plaintiffs to show more than that they would benefit in a tangible way from the court's intervention, would be to close our eyes to the uncertainties which shroud human affairs.") Plaintiff alleges multiple violations of the Americans with Disabilities act that have caused prior injury and pose an imminent threat to future harm to Plaintiff and all other disabled persons so situated. *See* (Compl. ¶ 12–26; Antolini Dec. ¶ 8-12.) Through a favorable decision, Plaintiff may can attain the remedy of injunctive relief through 1) a judicial order mandating all ADA repairs be made and/ or 2) injunctive relief in the form of facility closure until defendants become ADA compliant. See 42 U.S.C. 12181; Roberts v. Royal Atlantic Corp., 542 F. 3d 363 (2d Cir. 2008). Defendants have repeatedly acknowledged that their facility is out of compliance with the ADA. See Def. 56.1 No.'s 50- 51, 54. Defendants argue that they cannot comply because the repairs are "illegal" and "not readily achievable." *See* MSJ at 14; Dckt. No. 92 at 5 (defendants' expert Demetry Declaration). Notwithstanding the facially inaccurate position of defendants to be swiftly dealt with below, the standing element does not turn on the inherent disagreement between the parties concerning the achievability if the repairs; that is exactly what is being litigated. 549 F.3d at 107 (2d Cir.2008). Rather, redressability turns on the "non-speculative

likelihood that the injury can be remedied by the requested relief." Id. Plaintiff need not speculate that the judicial intervention sought will remedy the facility and finally end defendants' discriminatory conduct.

## II.     THERE ARE MULTIPLE GENUINE DISPUTES OF FACT AS TO THE ADA VIOLATIONS AT THE SUBJECT FACILITY

Summary judgment is appropriate only if the parties' submissions, in the form of depositiontranscripts, affidavits, or other documentation, show that there is "no genuine dispute as to any

material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An issue of fact is 'material' for summary judgment purposes if it 'might affect the outcome of the suit under the governing law,' and "an issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' Shade v. Hous. Auth. of City of NewHaven, 251 F.3d 307, 314 (2d Cir. 2001). The movant has the "burden of showing the absence of anygenuine dispute as to a material fact." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). "Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." Ethelberth v. Choice Sec. Co., 91 F.Supp.3d 339, 349 (E.D.N.Y. 2015); D'Amico., 132 F.3d 145. 149 (2d Cir. 1998).

Defendant's second main point is that there are no genuine disputes of material fact concerning the ADA violations at the facility because Plaintiff cannot articulate "any plausible proposal with at least some estimate of costs" and 2) the installation of an ADA compliant "wheelchair accessible ramp is not readily achievable." MSJ at 11, 13. Defendants misstate and misapply the law concerning a Title III lawsuit as they misrepresent the applicable burdens. Both arguments are incorrect because Plaintiff has met his minimal burden to articulate a plausible proposal that is readily achievable, and defendants conclusory and self-serving statements that Plaintiff refutes do nothing but show the breadth of the genuine disputes at bar.

A.   **Plaintiff has met his minimal burden as to the achievability of repairs**

There are two standards under the ADA that mandate building remediations and architectural repairs: the 'Maximum Extent Feasible' standard for any portion of the facility that has been materially altered since 1992, and the 'Readily Achievable' standard which requires that all repairs which can be accomplished without undue burden improve access to, including the obligation to remove architectural barriers. *See* 42 U.S.C. § 12181 *et seq*; Borkowski v. Valley Central School District, 63 F. 3d 131 (2d Cir. 1995); Roberts v. Royal Atlantic Corp., 542 F. 3d 363 (2d Cir. 2008); Kreisler v. Second Ave. Diner Corp., 2012 WL 3961304 (S.D.N.Y. Sep. 11, 2012) (aff'd 731 F.3d 184 (2d Cir. 2013)).

Poignantly, defendants' counsel is flatly incorrect in his assessment of both sides' respective burdens of proof for the standard of architectural repairs in Title III cases at the time of trial. The issue of whether Plaintiff can meet its minimal burden at trial regarding a showing of readily achievable means he is entitled to proceed, and defendants "must await the presentation of [the] evidence at trial." Dollman v. Mast Indus., Inc., 2011 WL 3911035, at *2 (S.D.N.Y. Sept. 6, 2011); Francis v. Amwest Realty Associates, LLC, 15-cv-9066 (S.D.N.Y. 2017) ([DE 61] Order DENYING dispositive motion in ADA Title III action where Judge Pauley found that the record was incomplete and expert testimony had not been adduced because *the trial had not commenced).* This case is currently in the pre-trial phase and, the following burdens are not yet in play until the time of trial where both sides' burdens must be met. *See* Borkowski v. Valley Central School District, 63 F. 3d 131 (2d Cir. 1995); Roberts v. Royal Atlantic Corp., 542 F. 3d 363 (2d Cir. 2008); Kreisler v. SecondAve. Diner Corp., 2012 WL 3961304 (S.D.N.Y. Sep. 11, 2012) (aff'd 731 F.3d 184 (2d Cir. 2013)). And even once trial commences, defendants would still be incorrect in their understandings of the applicable burdens of proof.  Under the ADA, disability discrimination includes "failure to remove

architectural barriers ... where such removal is readily achievable." <u>Kreisler v. Second Ave.</u> <u>Diner Corp.</u>, 2012 WL 3961304 (S.D.N.Y. Sep. 11, 2012).  Under the ADA,  'readily achievable' means easily accomplishable and able to be carried out without much difficulty or expense." <u>Id.</u> citing 42 U.S.C. § 12181(9). Factors to be considered when determining if a modification is readily achievable include: (1) the nature and costs of needed changes; (2) the financial resources of the facility, number of employees, effect on expenses and resources, and other impact on the facility; (3) the financial resources and size of the defendant; and (4) the type of operations at the facility and relationship between the facility and the defendant. <u>Id.</u> In order to establish a *prima facie* showing that a "reasonable accommodation" is "readily achievable" within the meaning of the ADA, "a plaintiff bears only a burden of production that is not a heavy one. That is, it would be enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits. <u>Roberts</u>, 542 F.3d at 370 (internal quotation marks and citations removed); *accord* <u>Valentine v.</u> <u>Brain & Spine Surgeons of N.Y., P.C.</u>,2018 WL 1871175, at *6 (S.D.N.Y. Apr. 16, 2018). Once a plaintiff has made a "*prima facie* showing that a reasonable accommodation is available, ... the risk and heavy burden of non-persuasion falls on the defendant. <u>Roberts</u>, 542 F.3d at 370. This "is a fact-specific inquiry that generally does not lend itself to summary judgment." <u>Kreisler v. Humane Society of New York</u>, 2018 WL 4778914 (S.D.N.Y. Oct. 3, 2018) (citing <u>Brown v. Cty. of Nassau</u>, 736 F. Supp. 2d 602, 622 (E.D.N.Y. 2010).

Presently, defendants claim that Plaintiff cannot meet his burden because his plans and proposals are not sufficient enough to their liking… "plaintiff has not met his burden... without a plausible proposal… and an estimate of costs." MSJ at 12. First, on the issue of an exterior ADA compliant ramp, that is not accurate. Plaintiff has provided his logic concerning a plausible

proposal for ramp installation. *See* (Ex. E Chen Report pg. 2; Ex. F Chen Dec. ¶7-15; Ex. G Chen Diagram). Plaintiff's expert has gone into great detail concerning the prospect of ramp installation, explaining that defendants 'scenarios' (more below) are able to be effectuated and their conclusions to the contrary are incorrect. Ex. E Chen Report pg. 2; Ex. F Chen Dec. ¶12-14; Ex. J Ramp Model; Ex. G Chen Diagram.) Mr. Chen has also provided Plaintiff's own proposal that be combined with elements of defendant's proposal, i.e., installation of the EZ ACESS Titan model ramp in a manner that most suits the restaurant (See below for Ramp Installation details pgs. 18-21.) *See* (Ex. F Chen Dec. ¶12-14; Ex. J Ramp Model; Ex. G Chen Diagram.) Second, Plaintiff has provided viable and modest cost estimates as well. *See* (Ex. E Chen Report pg. 2; Ex. F Chen Dec. ¶12-14; Ex. J Ramp Model.) It must be highlighted that Plaintiff vehemently disagrees with defendants that cost estimates must always be provided, as courts in this district have recognized. *See* <u>Range v. 230 West 41st Street LLC</u>, 61 NDLRP 118 (S.D.N.Y. 2020); <u>Celeste v. East Meadow Union Free School Dist.</u>, 373 Fed. Appx. 85 (S.D.N.Y. 2010). Nevertheless, Plaintiff's <u>minimal</u> burden has been clearly satisfied.  In <u>Roberts</u>, at 363, and later codified in <u>Kreisler</u>, the Second Circuit confirmed that "Plaintiff's minimal burden [at trial] does not require him or her to furnish exact or highly detailed plans. Because defendants possess superior access to information regarding their own facilities, such as architectural plans, maintenance requirements and history, and the historical and projected costs of repairs and improvements, they are typically in a position far more easily to refute a plaintiff's proposal as unreasonable than is a plaintiff to prove otherwise… defendants have 'far greater access to information than the typical plaintiff, both about [their] own organization and, equally importantly, about the practices and structure of the industry as a whole. <u>Kreisler v. Second Ave. Diner Corp.</u>, 731F.3d 184 (2d Cir. 2013) (citing <u>Borkowski</u>, 63 F. 3d at 131). Because Plaintiff

has provided his logic and modest proposals even before trial concerning readily achievable repairs, summary judgment is wholly inappropriate.

### B. Wheelchair Ramp Installation is Readily Achievable and Any Genuine Dispute Must Be Litigated at Trial

Defendants, through repeated inaccurate and unsubstantiated proclamations, assert that that a permanent wheelchair ramp cannot be installed at the subject facility because that would be 'illegal.' *See* (Ex. H Demetry Dec. ¶ 18; Ex. I Demetry Report at 4-5). This is purportedly because 1) the fire escape landing would be obstructed by a permanent ramp and 2) because such a ramp could not comply with what is 'required' by the Department of Transportation. *See* (Ex. H Demetry Dec. ¶ 18, 20, 23). These arguments are unpersuasive because they misunderstand the role of New York's regulatory bodies, they misunderstand the nature of ADA repairs, and are completely contradicted by Plaintiff's Expert. Thus, summary judgment could not be more inappropriate.

First, DOB & DOT do not make 'laws' via legislature. They are regulatory bodies that make rules and regulations. See '*DOB Business*

'https://www1.nyc.gov/site/buildings/business/business.page and '*DOT About*'

https://www1.nyc.gov/html/dot/html/about/about.shtml. Both work with private market participants to address private concerns through petitions, waivers, approval processes, and overall flexibility to find solutions and further the goals of their agency while also adhering to all applicable laws. These exact sentences are lifted from the NY DOT website:

> "NYC DOT's policy is to comply with all applicable laws. This includes, but is not limited to, the Americans with Disabilities Act (ADA) and the Rehabilitation Act." *See* https://www1.nyc.gov/html/dot/html/about/accessibility-information.shtml

> "NYC DOT may immediately revise, terminate or suspend, for a period of time and without prior notice, the seating area usage based on valid complaints, lack of

ADA access, need for repairs, or for any other reason." *See*
https://www1.nyc.gov/html/dot/html/pedestrians/openrestaurants.shtml

These exact sentences are lifted from the NY DOB Building Code Accessibility page:

> "NYC Building Code Accessibility Waivers: If the Department of Buildings
> rejects the architectural plans for a building due to an accessibility issue, a waiver
> may be obtained from the Mayor's Office for People with Disabilities
> ("MOPD")". *See* https://www1.nyc.gov/site/mopd/initiatives/accessibility-
> waivers.page

> "Contest a violation through a hearing, trial or other relevant process – Resolving
> Violations and Resolving Violations without a Court Hearing." *See*
> https://www1.nyc.gov/site/buildings/business/business.page

Defendants, through their expert report, use the word 'illegal' four times, every single
one without reference to any applicable law or code. *See* (Ex. I Demetry Report at 4-5). Each
one is simply "such a proposal would create illegal and non-compliant conditions." Id.
Defendants contentions are not only self-serving, but they are also simply inaccurate and
unverifiable. There is no way to legitimately know what "illegality" defendants speak of and
no way to properly rebut same because they do not cite to any statutory authority to support
their contentions. And defendants cannot do so on reply because that would introduce new
facts and arguments into their motion for summary judgment, which would leave no
opportunity for Plaintiff to argue "no that law is not violated because x, y, z." Such behavior is
prima fascia sandbagging and is prohibited in this district. *See* Wolters Kluwer Fin. Servs. Inc.
v. Scivantage, 2007 WL 1098714, at *1 (S.D.N.Y. Apr. 12, 2007).

These defendants have had almost two years (complaint filed August 15, 2019) since
this lawsuit was initiated to make this facility compliant with Federal law. They have had
numerous opportunities to engage with the requisite regulatory bodies that they claim stand in
the way of ADA compliance, *which are literally designed to work with private actors when
conflicts arise. See* [DOB and DOT] links. Instead, defendants feign ignorance and throw their

hands in the air. <u>Rosa v. 600 Broadway Partners, LLC</u>, 175 F.Supp.3d 191 (S.D.N.Y. 2016) is instructive on this point. There, the defendants in an ADA Title III action also tried to argue that remedial work on an elevator entrance could not be effectuated because the necessary measures would violate DOB codes and would also require some hard to come by outside approval form the Landmarks Commission. *See* <u>Rosa</u> at 208. Similarly, here, these defendants in ultimate conclusory fashion, state that because their architect says that ramp installation will encroach on a fire escape, ADA repairs are not readily achievable. *See* (Ex. H Demetry Dec. ¶ 10, 18, 20). But Judge Gardephe easily rejected that frail argument in <u>Rosa</u> by noting that those defendants, like these defendants herein, never even "sought such approval for the ADA modifications*"* from DOB or any other source. <u>Id</u>. Similar to the 600 Broadway defendants, these defendants argue that they have conclusorily established that the modifications are not readily achievable under their two "scenarios." MSJ at 15, 16; <u>Id.</u> But Judge Gardephe rebutted that argument as well, holding that just because an ADA defendant asserts that they are not authorized to undertake the repairs, that does not, and cannot not mean that a defendant is 'excused' from remedying ADA violations <u>Id.</u> Specifically where there is not even at attempt to gain such authorization for ramp installation, defendants have not "completely and irrevocably eradicated the effects' of the alleged ADA violations" **and cannot, under any test, be entitled to favorable judgment.** *See* <u>Rosa</u>, at 202 (citing <u>Gropper v. Fine Arts Housing, Inc.</u>, 12 F. Supp. 3d 664, 670 (S.D.N.Y. Apr. 3, 2014) (holding that Nobu restaurant defendant was required to seek authorization to install ADA compliant ramp and even if it gained permission, case not mooted because of lengthy process of ramp installation). The situation here does not even rise to the level of <u>Rosa</u> or <u>Gropper</u>. The defendants in this case not only fail to allege or show any attempt to gain approval for the necessary ramp or engage with either

regulatory body they allege is relevant here, but they do not even name the relevant statutes, codes, and provisions of any of the regulatory bodies that they lean on so heavily. They have not sought any engagement for variance or even looked to attain any advisory opinion. *See* (Ex. Ex. F Chen Dec. ¶11; Ex. G Chen Diagram; Ex. H Demetry Dec. ¶ 18.) Defendants have neglected to make the necessary repairs and have neglected to engage in any actual effort to effectuate same and their ultimate conclusion that ADA compliance would be illegal is wholly incorrect and falls flat. Instead, defendants have voluntarily chosen to sit on their proverbial hands doing nothing, except to talk about some buzzer outside the restaurant as if that would be the end all be all to achieve compliance with the Americans With Disabilities Act. MSJ at 2. In the past two years they could have hired an architect, in earnest, to perform a site survey, draw up remediation plans, submit permit applications and began the process of ADA compliance. Instead, defendants submitted expert materials in January and February of 2021, after the close of discovery [Dckt. No. 68] proclaiming a mythical exemption from having to do any architectural repairs. (Ex. I Demetry Report at 4-5). Defendants' arguments defy logic, but do instead act as an incorrect 'excuse' for not complying with the ADA, an actual law. Defendants' architect opines, in the paradigm of 'double speak' (*1984* George Orwell) that "*The permanent handicap accessible ramp is not possible for this location as we are dealing with an existing building that has existing conditions.*" *See* (Ex. I Demetry Report at 6.) Defendants do not seem to seriously engage with the ADA and such circumstances are the model of a case not ripe for summary judgement. *See* <u>Rosa v. 600 Broadway Partners, LLC</u>, 175 F.Supp.3d at 208 (S.D.N.Y. 2016) citing <u>Molski v. Foley Estates Vineyard & Winery</u>, LLC, 531 F.3d1043, 1048 (9th Cir. 2008). Because Defendants have not established that they can make their facilities accessible and usable by individuals with disabilities, their motion for

summary judgment must be denied." <u>Rosa v. 600 Broadway Partners, LLC</u>, 175 F.Supp.3d 191 (S.D.N.Y. 2016). Like in <u>Rosa</u>, these defendants provide no evidence they have even attempted to submit application(s) for such permits, or have ever attempted to make their facilities accessible. Defendants must bring their facility into ADA compliance (more below) and the repairs must be effectuated forthwith because "'[t]he ADA's remedial scheme is not limited to orders for the removal of encountered barriers, but instead dictates that "injunctive relief shall include an order to alter facilities to make such facilities ADA complaint for individuals with disabilities." <u>Kreisler</u>, 731 F.3d at 188–89 (citing <u>Chapman</u>, 631 F.3d at 951 (quoting 42 U.S.C. § 12188(a)(2)).

Second, even when considering defendants unsupported and unfounded assertions, at present there exists a hotly contested 'battle of the experts' and this dispute must be allowed to proceed onward to trial. <u>Harris v. Provident Life & Acc. Ins. Co.</u>, 310 F.3d 73, 79 (2d Cir. 2002). Resolution of the battle of experts is a matter best suited for trial by the trier of fact. <u>Victory v. Hewlett–Packard Co.</u>, 34 F.Supp.2d 809, 824 (E.D.N.Y. 1999); <u>Kreisler v. Humane Society of New York</u>, 2018 WL 4778914 (S.D.N.Y. Oct. 3, 2018). In <u>Kreisler v. Humane Society of New York</u>, the defendants argued that "all of the Plaintiff's proposals for reconstructing the Building's entrance were too speculative to proceed forward." <u>Humane</u>, at 6. Judge Schofield hit the nail on the proverbial head when she held that "Plaintiff nevertheless has met his "not heavy" burden of production; the proposed renovations are not so facially disproportionate to the benefits of making the building wheelchair accessible that no reasonable jury could rule for Plaintiff." *See* <u>Id.</u> *citing* <u>Roberts</u>, 542 F.3d at 370. In <u>Brown v. Mermaid Plaza Associates LLC</u>, 2018 WL 2722454 (E.D.N.Y. 2018), an ADA Title III action, both parties retained their own experts who subsequently disagreed about the measurements of

multiple ramp proposals and what actions could legitimately be taken to remedy the non-compliant slopes. <u>Mermaid</u>, at 3. The defendant plaza establishment made a motion for summary judgment proclaiming arguendo that they had made the necessary repairs and the repairs they did not make were not readily achievable, and that they were excused from complete/ total ADA compliance. <u>Id.</u> at 4. The court denied the defendant's motion for summary judgment in toto because the defendants failed to show that ADA compliance was "virtually impossible." <u>Id.</u> at 9-10. The defendant relied on a [construction] expert to support its claim that the repairs were structurally andtechnically infeasible, but the [disagreement among the parties' experts] created genuine and triableissues of material fact. <u>Id.</u> at 10. Judge Donnelly aptly and succinctly held that "there was no consensus concerning whether building and street slopes at issue were able to be brought into compliance with ADA Standards…the experts disagree about [the slopes] and whether the repairs may comply with the ADA Standards. The court ruled that "This factual dispute, alone, shows that theplaintiff's claims are not moot"… and there are genuine issues for trial." <u>Id.</u> at 8-10; *See also,* <u>Sutton v. 626 Emmut Properties, Ltd.</u>, 2019 WL 3531564 (S.D.N.Y. Aug. 2, 2019) (Summary Judgment in ADA Title III action denied even when defendants expert report raised legitimate issues of mootness via ongoing remediations: [Dckt. No. 79], 10/10/2019 ORDER denying summary judgment after Plaintiff expert's response created clear triable issues of fact evident from both sides expert's disagreement concerning plans to bring restaurant into ADA compliance). Similarly, here, at minimum, extreme questions of fact exist as to whether the defendants can bring the facility into ADA compliance to the maximum extent feasible and/ or make the necessary repairs that are readily achievable. On page 13 of their memo of law, defendants write that their architect, "Mr. Hany Demetry, R.A." concludes that 'an ADA compliant wheelchair accessible

ramp at the entryway is not possible at the Premises. Every scenario analyzed presents illegal, non-conforming conditions in violation of either the NYC Building Code, the Fire Code, DOT regulations, or the ADA.' See Demetry Dec. ¶ 29, Exhibit B." First, there is no paragraph 29 of the Demetry declaration. *See* (Dckt. No. 92 ¶ 1-25). Second, Mr. Demetry is admittedly not a lawyer. He is also not a judge. Nor is he a regulatory agent/ employee or a law enforcement officer of any kind. The statements offered are blanket conclusions of law by a non-lawyer claiming that certain things are 'illegal,' without citation to *any specific* provision or applicable authority. *See* (Ex. H Demetry Dec. ¶ 18.) Third, Plaintiff's expert has gone into great detail concerning the prospect of ramp installation and its viability. See (Ex. E Chen Report pg. 2; Ex. F Chen Dec. ¶7-15; Ex. G Chen Diagram). Mr. Chen has explained that wheelchair ramp installation is a very viable option for bringing the entry of Pepe Giallo Restaurant into ADA compliance. *See* (Ex. F Chen Dec. ¶11-15; Ex. G Chen Diagram.) Page 3 of the Demetry report shows the restaurant entrance as it currently exists, and pages 4 & 5 illustrate what defendants have described as the only two separate 'scenarios' under which a ramp might be installed.

In sum and substance, defendants contend that the first scenario, which includes extending a seven foot ramp straight out from the restaurant door toward the sidewalk, is not 'feasible' because the ramp/ handrail would partially obstruct the above hanging fire escape and because the ramp would not be far enough away from a near-by tree. (Ex. I Demetry Report at 4.) For the fire escape issue, as noted, defendants cite no specific provision of any code, but even assuming the 'safe landing' provision is in play, it is not an issue at all. Mr. Chen has explained that neither the handrails or the ramp itself are a problem because the platform landing in the immediate entry way is 36 inches by 36 inches. *See* (Ex. F Chen Dec. ¶6; Ex. G Chen Diagram.) The 2010 ADA standards require that the 'top' of a ramp, the platform that

the wheelchair user ascends to in the entryway of a facility, must be at least 60 inches by 60 inches. (some landing of 5' by 5'.) *See* 2010 Justice Department Standards for Accessible Design 405.7(2-3). And Plaintiff's expert and defendant's expert both agree that the fire escape ladder juts out only about 3-10 inches from the building. *See* (Ex. I Demetry Report at 2; Ex. F Chen Dec. ¶6.) Therefore, in order to meet the 5' by 5' standard enumerated in the 2010 guidelines, defendants are already required to add to the entry way at least another 24 inches by 24 inches, which inherently includes the ladder landing space because the fire escape ladder not extend more than 10 inches from the building. Id. The fire escape ladder extends all the way down to just (1) one inch above the ground when unfurled. See (Ex. F Chen Dec. ¶6.) That area where one would exit the ladder would be directly within the landing space that is already inherently safe and clear and wide as it must be for wheelchair users to readily access it; in fact, it is arguably more 'safe' than the average cluttered sidewalk or ladders that hang over sidewalk hatch doors. Defendants contend that any ramp must extend outward at least 7 feet in order to meet the 1:12 slope maximum. MSJ at 15; (Ex. H Demetry Dec. ¶ 20.) They analyze this as an inherent prerequisite. But this is not so. The ADA requires that Ramp runs shall have a running slope not steeper than 1:12 UNLESS in existing facilities, ramps shall be permitted to have running slopes steeper than 1:12 complying with Table 405.2 "where such slopes are necessary                due               to              space               limits." https://www.ada.gov/regs2010/2010ADAStandards/2010ADAstandards.htm#pgfId-1006877. As such, there are clear space limitation exceptions and the ramp need not be seven feet long. Just like most analysis associated with architectural design and the ADA; this is a balancing act that is not fixed in stone. *See* Mermaid. Even more elementary however is the bewildering contention that installing a ramp to prevent disability discrimination is not something

defendants will do because that will interfere with a single 14 inch tree. MSJ at 15. Wow. As noted, DOT as well as the Department of Consumer Affairs are designed to work with private actors. Instead of removing the small tree, relocating the small tree, or even inquiring with the any requisite regulatory body about anything at all having to do with a tree, defendants actually argue to this Court "well there is a small tree at least eight feet away from the restaurant, so that's the end of that." Combined with their incorrect "mandatory 7 foot ramp length" analysis, defendants' arguments are soundly defeated by Plaintiff and the repairs must be made.

Defendants' own analysis of its second proposed scenario is even more flimsy and inaccurate. Page 5 of the Demetry report illustrates what defendants have described as 'scenario 2' wherein the ramp extends out and runs to the right, 7 feet parallel to the building from the entryway. (Ex. I Demetry Report at 4; Ex. H Demetry Dec. ¶ 23.) Defendants argue that a ramp to the right of the building is not possible because it will extend too far close to the adjacent building's steps, not allowing the necessary 12'' clearance under the guidelines. MSJ at 15; (Ex. H Demetry Dec. ¶ 23.) But as noted above, the 7 foot mandatory length is inaccurate, as the angle of the slope is adjustable based on space limitation concerns. (Ex. F Chen Dec. . ¶ 11.) Therefore, adjusting the length of the ramp will provide more than enough space for ramp entry at the ground level. *See* (Ex. F Chen Dec. . ¶ 11.) Secondly, it appears that defendants agree that the platform can be manipulated to accommodate the fire escape as Plaintiff noted above regarding scenario #1: ("platform is enlarged to accommodate the fire escape above." (Ex. H Demetry Dec. ¶ 23.) But under scenario 2, defendants argue that this method would take up too much sidewalk space and take away form room for tables. Id. Thirdly, defendants claim that  such a ramp would take up too much sidewalk space and is not allowed by DOT. The previous analysis from scenario 1 applies, as a changed ramp length assures that defendants

will still be within the 44'' "matter of right" sidewalk space. (Ex. F Chen Dec ¶ 13; Ex. H Demetry Dec. ¶ 23.) But also, Plaintiff has already rebutted the DOT point, highlighting New York's clear rules and initiatives to work with private parties, especially when it comes to disability access concerns. *Supra* Pg. 11-12.] Plaintiff's expert as proffered his own proposals on this point as well. *See* (Ex. E Chen Report pg. 2; Ex. F Chen Dec. ¶7-15; Ex. G Chen Diagram.) Mr. Chen has suggested that a slightly angled ramp approach to the left or right side of the facility, extending from the platform, on outward be installed. Ex. F Chen Dec. ¶12-14; Ex. G Chen Diagram.) Mr. Chen has also provided of the most reputable sources for such options and is willing to engage with defendant's architect regarding same. (Ex. F Chen Dec. ¶17; Ex. J Ramp Options.)

Regarding the "lost tables" argument, this is again where defendants fundamentally misunderstand the concept of a 'readily achievable' analysis. First, Plaintiff does not concede that four tables would be lost. The ramp can be constructed in a manner that will not cause table loss as it may be constricted within 6 inches of the restaurant wall, thus not pushing out any tables. *See* (Ex. F Chen Dec ¶ 13). Secondly the readily achievable analysis is a balancing test, which were so enumerated on pages of 10-11 of the instant memo, (cost, scope, nature, burden, resources, impact) 42 U.S.C.A. § 12182(b)(2)(A)(iv). Defendants fail to understand that blanket proclamations by a non-lawyer of "not readily achievable" because one side alleges that tables will be lost, is not the law. Even if some space(s) were to be lost, or even if changes did need to be made to the facility, the determination of "readily achievable" is a unique balancing test that factors in not just the nature of the repair (i.e., requiring that the defendant work with local regulatory officials like DOB), but also includes the cost of the repairs, the resources of the establishment, the benefits and burdens of the work, and more. *See*

42 U.S.C. 12101 *et seq*.; <u>Berthiaume v. Doremus</u>, 998F.Supp.2d 465 (W.D. Va. 2014). This "is a fact-specific inquiry that generally does not lend itself to summary judgment." <u>Brown v. Cty. of Nassau</u>, 736 F. Supp. 2d 602, 622 (E.D.N.Y. 2010). In <u>Brown</u>, summary judgment was denied for the ADA defendants where the defendants argued that repairs were not readily achievable because they would violate the ADAAG. 736 F. Supp. 2d at 617. The Plaintiff raised  genuine issues of disputed fact on the issue of whether he  could show that the readily achievable balancing test weighed in his favor where modifications to allow additional wheelchair-accessible seating and the other proposed structural modifications may have been readily achievable. <u>Id.</u> At present, defendants do not claim that the necessary repairs are too expensive. MSJ at 1-19. And they do not claim any undue burden. <u>Id.</u> Defendants do not claim that the facility does not have the resources or the wherewithal to effectuate repairs. <u>Id.</u> Rather, defendants rest their laurels on the idea that any ramp will extend too close to a 14 inch tree and might affect the usability of a portion of the outdoor seating. Just as in <u>Mermaid</u> and <u>Humane</u>, a defendant ADA 'expert,' cannot proclaim that certain actions can or cannot be taken when there is legitimate dispute over those very actions. Defendants' expert report dated January 18, 2021, which is supposed to help clarify the party's position (See Fed. R. Civ. P. 26(a) & 34), ironically only further delegitimizes defendants unsupported claims. Contrary to defendants' contentions, such proclamations do not come anywhere close to showing that ramp installation is not "readily achievable", and they are not entitled to summary judgment.

The foregoing analysis also applies to situations where a "public accommodation" has made "alterations" to its facility in a way "that affects or could affect the usability of the facility or part thereof" after January 26, 1992, discrimination includes a failure to make [the] alterations in such a manner that, <u>to the maximum extent feasible</u>, the highest standard, the

altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. 42 U.S.C. § 12183(a)(2). Defendants have provided materials that indicate that both the entrance of the building as well as the non-complaint door and 1 inch sil have been renovated since 1992. *See* Demetry Dec. at 1 "Building History.) As such, defendants must make all repairs to the maximum extent feasible.  *See* (Ex. E Chen Report at 2-3; Chen Ramp proposal; Chen Dec.  ¶ 10-14.) At the very least, summary judgment would be improper on the issue of 'maximum extent feasible' as there is genuine dispute of fact abound. *See* <u>Grella v. Avis Budget Group, Inc.</u>, 2016 WL 638748 (S.D.N.Y. Feb. 11, 2016).

Finally, defendants argue that Plaintiff's claims under the New York State and City Human Rights Law,Executive Law and Administrative Code and common law negligence should be dismissed because his ADA claims are not viable. MSJ at 18-19. Defendants do not make this argument very forcefully and their only point is that since Plaintiff has not met his burden under the ADA, he also has not done so for New York State, City, and executive claims. <u>Id.</u> But because they are wholly incorrect and because Plaintiff has met his burden and then some, Plaintiff's claims should defeat summary judgment and the case should proceed to trial with all claims alive and well. *See* <u>Rosa v. 600 Broadway Partners</u>, 175 F. Supp. 3d 191, 206 (S.D.N.Y. 2016) (denying motion for summary judgment as to city/ state claims where summary judgment denied for ADA claims).

## <u>CONCLUSION</u>

Presently, the entire case and controversy herein is in dispute such that this case must proceed to trial.  Whether or not Plaintiff can ultimately carry its minimal burden in a Title III

case is in turn for the factfinder, not the Court on a summary judgment motion, to decide." *See*

Wright v. New York State Department of Corrections, 831 F.3d 64 (2d Cir. 2016); Brown v. Cty.

of Nassau, 736 F. Supp. 2d 602, 622 (E.D.N.Y. 2010). These defendants submit conclusory

statement and arguments and appoint their architect and lawyers as judge and jury Summary

judgment must be denied so that this case can rightfully proceed to trial.

     Respectfully submitted,

                             _____/S_____
                             Stuart H. Finkelstein Esq.
                             Attorney for Plaintiff
                             338 Jericho Turnpike
                             Syosset, New York 11791
                             Telephone: (718) 261-4900