UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
...................................................................X
DINO ANTOLINI,

                                Plaintiff,                Case No. 18-cv-07645

        -against-

BARBARA NIEVES, 195 10TH AVE,
LLC, GASPARE VILLA, ANNA DASILVA
and SONNY LOU, INC.,

**PLEASE TAKE NOTICE**, that pursuant to S.D.N.Y. Local Civil Rule 56.1 and Judge Vernon Broderick's Individual Rules of Practice, Plaintiff submits the following counter statement of facts in opposition to defendants' statements produced therein.

                                                                                COUNTER STATEMENT OF
                                                                                FACTS PURSUANT TO S.D.N.Y.
                                                                                LOCAL CIVIL RULE 56.1

## THE ACTION, PARTIES AND JURISDICTION

1. The above captioned action (the "Action") was commenced with the filing of a Summons and complaint on August 15, 2019.

   - Plaintiff agrees with this statement.

2. Service of process on Defendant Sonny Lou, Inc. and Anna DaSilva by personal delivery upon Anna DaSilva.

   - Plaintiff agrees with this statement.

3. Service of process on Defendant 195 10th Ave, LLC and Barbara Nieves was alleged effectuated by service upon an employee of Baxter Check Cashing located at 81-36 Baxter Avenue, Elmhurst, New York 11373, Ms. Emily Chauevez.

   - Service is not "alleged" to have been effectuated, it was effectuated properly. See Executed Summons

4. Baxter Check Cashing is the New York Department of State designee for service of process for 195 10 Ave, LLC.

5. Ramon Nieves died on January 1, 2020.

   - Plaintiff agrees with this statement. Condolences to the Nieves family.

6. The parties have stipulated to dismissal of all claims against Ramon Nieves with prejudice.

   - Plaintiff agrees with this statement.

7. Defendant 195 10th Ave, LLC owns the building located 195 10th Avenue, New York, New York.

   - Plaintiff agrees with this statement

8. 195 10th Avenue is a mixed-use building with a commercial unit on the ground floor and

five residential units above.

- Plaintiff agrees with this statement.

9. Defendant Sonny Lou, Inc. leases the ground floor commercial unit at 195 10th Avenue to operate a restaurant business commonly known as "Pepe Giallo" (the "Premises").

- Plaintiff agrees with this statement.

10. A written lease agreement exists between 195 10th Avenue, LLC and Sonny Lou, Inc.

- Plaintiff cannot agree without being made privy to the controlling lease agreement

11. The lease agreement began March 15, 2016 and continues to date.

- Upon information and belief, Plaintiff agrees with this statement.

12. On front glass windowpane at the main entryway of Premises, a handicap emblem is displayed with a doorbell directing patrons to use the bell for handicap access.

-Plaintiff cannot confirm the veracity of this statement. There was no doorbell visible upon Plaintiff's attempt to access the facility. Regardless, it is irrelevant as the facility is currently inaccessible to disabled individuals. *See* (Antolini Dec. at 2; Plaintiff's Memo of law in opposition at 6, 7.)

13. Sonny Lou uses a movable temporary wheelchair accessible ramp to accommodate persons with disabilities.

- Plaintiff cannot confirm the veracity of this statement. Plaintiff cannot and does not agree and lacks facts sufficient to confirm. *See* (Antolini Declaration at 2.)

14. The Complaint alleges five causes of action stemming from alleged violations the Title III of the Americans with Disabilities Act, the New York State Executive Law, New York State Civil Rights Law, the Administrative Code of the City of New York, and common law negligence.

15. The Complaint alleges that the following barriers to access exist at the Premises:

   I. An accessible entrance to the facility is not provided. Defendants fail to provide

        that at least 50% of its public entrances are accessible. See 1991 Standards 4.1.3.8(a)(i). Defendants fail to provide that at least 60% of its public entrances are accessible. See 2010 Standards 206.4.1. Defendants fail to provide that its public entrances are accessible. See 2014 NYC 1105.1.

II.     There is an insurmountable step at the exterior side of the entrance door which has a change in level greater than ó inch high) as well as a protrusion inside the restaurant leading to the dining area. Defendants fail to provide that changes in level greater than 1/2-inch high are ramped. See 1991 Standards 4.3.8, 2010 Standards 303.4, and 2014 NYC 303.3.

III.    The entrance level lacks level maneuvering clearances. At the pull side of the door due to the steps. Defendants fail to provide an accessible door with level maneuvering clearances.

        See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.

IV.    Routes throughout the Restaurant are less than 36 inches wide. Defendants fail to provide an accessible route of at least 36 inches. See 1991 Standards 4.3.3, 2010 Standards 403.5.1, and 2014 NYC 403.5.

V.     Routes throughout the Restaurant lack required maneuvering around end caps. Defendants fail to provide the minimum required maneuvering clearances from which to make a 180-degree turn around an element along the accessible route. See 1991 Standards 4.3.3, 2010 Standards 403.5.2, and 2014 NYC 403.5.1.

VI.    The service counter is more than 36 inches above the finish floor. Defendants fail to provide an accessible portion of counter that is no greater than 36 inches above the finish floor and no less than 36 inches in length (and extends the same depth as the general sales and/or service counter) at accessible sales and/or service counters. See 1991 Standards 7.2(1), 2010 Standards 904.4, and 2014 NYC 904.3.

VII.   The exit door, which is also the entrance door, is not accessible as described above. Defendants fail to provide accessible means of egress in the number required by the code. See 1991 Standards 4.1.3(9), 2010 Standards 207.1, and 2014 NYC 1007.1.

VIII.  Failure to provide an accessible pathway, of at least 36 inches in width, in front of restroom area, in violation of 28 C.F.R. Part 36, Section 4.3.3. Failure to provide at least one lavatory that has a clear floor space for a forward approach of at least 30 inches wide and 48 inches long as required by 2010 ADAAG § 606.2;

IX.    Failure to provide sufficient clear floor space/sufficient turning radius, in restroom to provide safe adequate maneuverability. Failure to rearrange stall partitions and/or walls to provide sufficient accessibility and maneuvering

        space in restroom for individuals with disabilities, as required by 28 C.F.R. Part 36, Section 4.17. Photographs depicting some of the discriminatory barriers are annexed as Exhibit A, made a part hereof and incorporated by reference herein.[1]

16. On November 2, 2020, Plaintiff served upon Defendants the resume of Plaintiff's proposed expert witness, Billy Chen.

- Plaintiff agrees with this statement.

17. On November 30, 2020, Plaintiff's expert witness, Billy Chen, R.A., conducted an interior and exterior survey of the Premises.

- Plaintiff agrees with this statement.

18. Billy Chen is the principal of B Chen Architect, PPLC.
- Plaintiff agrees with this statement.

19. Billy Chen conducted the survey alone and did not have with him any employees or representatives of B Chen Architect PPLC or any employee or representative of Plaintiff, or Plaintiff's counsel.

- Plaintiff agrees with this statement; Mr. Chen is good at his job.

20. Mr. Chen is a registered architect within the State of New York.

- Plaintiff agrees with this statement

21. Mr. Chen's survey consisted of walking around the front façade of the Premises and the interior public dining area of the restaurant.

- Plaintiff agrees with this statement to the extent that part of this survey did entail these activities. Mr. Chen also took measurements, took notes, compiled a report, research remediation options, studied plans, and engaged thoughtfully with this litigation. See Chen Dec.; Chen Report, Chen Ramp Proposals; Chen Diagrams.

22. Defendant Anna DaSilva and Gaspare Villa were present for the entirety of the Chen's

survey.

- Plaintiff disagrees with this stamen as it is unable to be confirmed by Mr. Chen or Plaintiff.

23. Mr. Chen did not take any measurements of the interior of the Premises.

- Plaintiff Disagrees with this statement as it is not true. *See* (Chen Dec. ¶ 6-8.)

24. Mr. Chen did not take any measurements of the exterior of the Premises.

- Plaintiff Disagrees with this statement as it is not true. *See* (Chen Dec. ¶ 6-8.)

25. Following the survey, Mr. Chen generated a report containing his findings as to whether the Premises was compliant with the standards of the American Disabilities Act.

26. Mr. Chen's findings report is dated December 10, 2020. (the "Chen Report").

- Plaintiff agrees with this statement

27. The Chen Report concluded that the interior of the Premises is fully compliant with the standards of American Disabilities Act.

- This is not true. *See* (Chen report: "The push and pull of the exterior door would meet ADA requirements, once the exterior ramp is Installed." Pg. 2, line 2 and 3. Meaning, the exterior door is noncompliant as well.  Also, In front of the dining area, there Is a service counter approximately 38" high, on the left side with a ADA accessible passage on the right side. Depending on the purpose of how the service counter Is used, It might or may not be an ADA Issue. Also bottom of page 2 "The only non-compliant Issue Is the 1" sill that opens up Into the rear yard dining area. They stress their outside dining area but it is not even accessible!

28. The Chen Report concluded that exterior front entryway of the Premises is not ADA compliant because the main entry door is raised approximately 6" above the sidewalk.

- This is only partly true and Plaintiff's disagrees with defendants multiple omissions. The exterior door is also not ADA compliant and must be remedied *See* (Chen Report

  at 2; Plaintiff's Memo of law in opposition at 23.)

29. Mr. Chen did not survey, measure or photograph the fire escape ladder above the front entryway of the Premises.

- Plaintiff disagrees with this statement as it is untrue. *See* (Chen Report pg. 1.) To the extent that any part of the fire escape cannot be seen in the photographs, Mr. Chen has thoroughly explained his position concerning the fire escape *See* (Chen Dec. ¶ 6, 14.) This has also been fully flushed out in Plaintiff's Memo of law in opposition. *See* (Memo at 19-22.)

30. Mr. Chen did not survey, measure or photograph the tree or tree bedding across from the front entryway of the Premises.

- Plaintiff Disagrees with this statement as it is not true, measurements and notes were taken and suggestions to the contrary are false. *See* (Chen Dec. ¶ 6-8, 11.)

31. Mr. Chen did not survey, measure or photograph the concrete steps of the school building that is immediately adjacent to the Premises.

- Plaintiff Disagrees with this statement as it is not true. *See* (Chen Dec. ¶ 6-7, 11.)

32. Mr. Chen did not survey, measure or photograph the cellar hatch door immediately adjacent to the front entryway of the Premises.

- Plaintiff Disagrees with this statement as it is not true. *See* (Chen Dec. ¶ 6; Plaintiff's Memo of law in opposition at 19-20.)

33. Mr. Chen did not survey, measure or photograph the main entryway door to the residential units above the Premises which is located immediately adjacent to the front entryway of the Premises.

- - Plaintiff Disagrees with this statement as it is not true. *See* (Chen Dec. ¶ 6; Chen Report with pictured at 1-3)

34. The Chen Report does not provide any proposed architectural drawings of the

recommended ADA compliant wheelchair ramp.

- Defendant's statement is misleading. The Chen Report has photographs and analysis. *See* (Chen Report pg. 2.) Mr. Chen has also provided sketches, diagrams and ramp proposals. *See* (Attached Ramp design and sketch submitted.)

35.    The Chen report does not state whether the recommended ADA compliant wheelchair ramp would conform with New York City Building Code, the New York City Fire Code, the Department of Transportation, Mass Transit Authority, or any other city, state or federal agency or authority.

- This is untrue and misleading. The Chen report details the violations and the Chen declaration along with Plaintiff's Memo of Law detail the incorrect assertions made concerning building and fire code. *See* Chen Report pg. 2; Chen dec. 6, 7, 11-12, ¶ 14.) Defendants have not filed the necessary and attendant plans, site survey, applications for permits, attend hearings and then it may be known if it supposedly passes muster. Defendants would then have the right to appeal to the New York DOB and other local agencies decisions, go all the way up the latter, and if unsuccessful, they would take their grievance into court.

36.    Plaintiff's expert has not stated any ADA violations as to the interior of the Premises.

- This is untrue. Plaintiff's expert has described the entry door as non-compliant, the sil leading to the outdoor space, as well as the service counter. *See* Chen Dec. ¶ 6, 9; Chen Report at 2.

37.    Plaintiff's expert has not proposed a readily achievable remediation to the exterior main entryway condition.

- This is untrue. The Chen Declaration at ¶ 11-14 proposes readily achievable ramp installation. Taken together with the accompanying ramp proposals by defendants that Plaintiff's expert and memo correct and opine on, as well as both sides' sketches submitted, along with Plaintiff's memo of law (pgs. 19-22) explain in great depth, how ramp installation its clearly readily achievable.
-

38.    Plaintiff's expert does not state whether Defendant's achieved remedy (the movable

wheelchair accessible ramp) is not compliant or not sufficient.

- This is untrue and Plaintiff vehemently disagrees. Such a remedy is wholly insufficient and not worthy of discussion when archecitual repairs are readily achievable under the balancing test in 42 U.S.C. 12101. When a defendant can make their facility complaint with the ADA so as to stop discriminating against the disabled, they must do so. *See* (Plaintiff's Memo of law in opposition at 20-22; Ex. F Chen Dec. ¶12-14; Ex. G Chen Diagram.)

39. Plaintiff's expert has not proposed a feasible remediation to the exterior main entryway condition.

- Plaintiff vehemently disagrees with this statement as it is plain incorrect. Plaintiff has proposed feasible options for remediation of the entry way so as to meet his minimal modest burden. This involves multiple methods of ramp installation and potential options for the architectural process and the ramp product. *See* (Plaintiff's memo of law in opposition at 18, 19, 21; 1Chen Dec. ¶12-14; Ex. G Chen Diagram; Chen Titan Ramp proposal.)

40. On January 12, 2021, Plaintiff's retained Hany Demetry, R.A. of Sotir Associates as an expert witness.

- Upon information and belief, Plaintiff agrees with this statement.

41. Hany Demetry is a registered architect within the State of New York.

- Upon information and belief, Plaintiff agrees with this statement

42. On January 12, 2021, Mr. Demetry performed a site inspection of the Premises located at 195 10th Avenue, New York, New York.

- Upon information and belief Plaintiff agrees with this statement.

43. Mr. Demetry's inspection consisted of observing the interior and exterior of the Premises, photographing the exterior Premises, and documenting all façade and sidewalk measurements, needed to prepare plans and construct the ramp.

- -Plaintiff cannot confirm the veracity of this statement. Plaintiff has no personal knowledge and cannot agree that defendant photographed and documented "all" elements of the all façade and sidewalk. *See* (Demetry Dec; Demetry Report.)

44. Following the inspection, Mr. Demetry prepared a report containing his findings as to whether an ADA compliant wheelchair ramp is feasible at the front entryway of the Premises.

45. Mr. Demetry's findings report is dated January 14, 2021 (the "Demetry Report").

- Plaintiff agrees with this statement.

46. Mr. Demetry analyzed whether an ADA compliant wheelchair ramp is feasible under the current entryway design of the Premises.

- Plaintiff agrees with this statement to the extent that Mr. Demetry did engage with this process but not to his conclusions, which are incorrect.

47. Mr. Demetry concluded that an ADA compliant wheelchair ramp is not feasible under the current entryway design of the Premises because such construction would result in an illegal condition.

- Mr. Demetry may have 'concluded' this but he is wrong and his conclusions are illogical and unfounded. Defendants have not sought any approval or engagement with DOB, DOT, or DOCA (Dept of consumer affairs). They have manufactured a closed universe where they get to negate the very two wheelchair options that they themselves created.

48. Mr. Demetry proposed two alterative scenarios ("Scenario #1" and "Scenario #2") for the construction of an ADA compliant wheelchair ramp.

- The Demetry report did attempt to do this, but Plaintiff strongly disagrees with the statements therein. Plaintiff and his expert have thoroughly explained how both of defendants 'scenarios' can actually be modified to work well as they are based in part on faulty premises and illogical conclusions. *See* (Plaintiff's Memo of law in opposition at 19-22; Chen Dec. 11, 14-15.)

49. Under Scenario #1, Mr. Demetry concluded that an ADA compliant wheelchair ramp was not feasible as it would result in an illegal condition.

- Plaintiff vehemently disagrees with this statement. Yes, architect Demetry did state this. But Plaintiff's memo of law swiftly negated this bogus 'illegality argument' as to both scenario 1 and scenario 2. *See* (Plaintiff's Memo of law in opposition at 14-16, 19). This was also swiftly rebuffed by Plaintiff's architect as defendants did not place bids or apply to any regulatory body. *See* (Chen Dec. ¶12, 14-16; 19-21).

50. Under Scenario #2, Mr. Demetry concluded that an ADA compliant ramp was not feasible as it would result in an illegal condition.

- Plaintiff vehemently disagrees with this statement. Yes, architect Demetry did state this. But Plaintiff's memo of law swiftly negated this bogus 'illegality argument' as to both scenario 1 and scenario 2. *See* (Plaintiff's Memo of law in opposition at 14-16, 19). This was also swiftly rebuffed by Plaintiff's architect as defendants did not place bids or apply to any regulatory body. *See* (Chen Dec. ¶12, 14-16; 19-22.)

51. The Demetry Report contains proposed architectural drawings for construction of the ADA compliant ramp under the current Premises entryway.

- Plaintiff agrees that the defendant architect did attach some diagrams.

52. The Demetry Report contains proposed architectural drawings for construction of the ADA compliant ramp under the Scenario #1 proposal.

- Plaintiff agrees that the defendant architect did attach some diagrams to his proposal.

53. The Demetry Report contained proposed architectural drawings for construction of the ADA compliant ramp under the Scenario #2 proposal.

- Plaintiff agrees that the defendant architect did attach some diagrams to his proposal.

54. The Demetry Report stated whether an ADA compliant wheelchair ramp would conform with New York City Building Code, the New York City Fire Code, the Department of Transportation, Mass Transit Authority, or any other city, state or federal agency or authority.

- The Demetry Report puts forth improper conclusions of law based on pure speculation without any reference to an applicable statutory provision. *See* (Plaintiff's Memo in Opposition at 16, 19; Chen Dec. ¶12, 14-16; 19-21). Plaintiff's expert has rejected the defendants unilateral determinations about proper authorization to make the repairs. Defendants unilateral assertion that general codes would be violated, rather than any actual attempt to work with the relevant regulatory bodies and bring their restaurant into ADA compliance is bogus and this case must be proceed to trial.

Dated: April 19, 2021

                        Finkelstein Law Group PLLC

                        /s/ Stuart H. Finkelstein
                        Stuart H. Finkelstein Esq.
                        Finkelstein Law Group
                        Attorney for Plaintiff
                        338 Jericho Turnpike
                        Syosset, New York 11791
                        Telephone: (718) 261-4900
                        Finkelsteinlawgroup@gmail.com

                        .