UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                    :
DINO ANTOLINI,                                      :
                                                    :
                            Plaintiff,              :
                                                    :          19-CV-7645 (VSB)
            - against -                             :
                                                    :          **OPINION & ORDER**
                                                    :
BARBARA NIEVES, 195 10TH AVE, LLC,                  :
GASPARE VILLA, ANNA DASILVA                         :
and SONNY LOU, INC.,                                :
                                                    :
                            Defendants.             :
                                                    :
--------------------------------------------------------X

Appearances:

Stuart H. Finkelstein
Finkelstein Law Group, PLLC
Syosset, New York
*Counsel for Plaintiff*

Louis V. Fasulo
Samuel Braverman
Michael Giordano
Fasulo Braverman & DiMaggio, LLP
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

        Plaintiff Dino Antolini ("Plaintiff") brings this action against Defendants Barbara Nieves,

195 10th Avenue LLC, Gaspare Villa, Anna DaSilva, and Sonny Lou, Inc. (together,

"Defendants") for declaratory and injunctive relief for alleged discrimination against Plaintiff

under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et*

*seq.*, New York State Executive Law § 296 ("NYSHRL"), New York State Civil Rights Law §

40 ("NYSCRL"), and the Administrative Code of the City of New York § 8-107  ("NYCCRL").

Currently before me is Defendants' motion for summary judgment to dismiss all of Plaintiff's

claims.  Because I find that the material facts are undisputed, and that, as a matter of law,

Defendants have not discriminated against Plaintiff under Title III of the ADA, and because I

decline to exercise supplemental jurisdiction over Plaintiff's state law claims, Defendants'

motion for summary judgment dismissing Plaintiff's Complaint is GRANTED.

## I.     __Factual Background__[1]

Defendant 195 10th Ave, LLC owns the building located at 195 10th Avenue, New York,

New York ("Building").  (Pl. 56.1 ¶ 7.)[2]  The Building is a mixed-use structure with a

commercial unit on the ground floor and five residential units above.  (*Id*. ¶ 8.)  Defendant

Sonny Lou, Inc. leases the ground floor commercial unit in the Building and operates a

restaurant known as Pepe Giallo ("Pepe Giallo" or the "Premises").  (*Id*. ¶ 9.)  Defendants

Gaspare Villa and Anna DaSilva own Sonny Lou, Inc. and are parties to the Premises' lease.

(Compl. ¶¶ 9–10.)  "The lease agreement began March 15, 2016 and continues to date."  (*Id*. ¶

11.)

Plaintiff lives at 225 West 23rd Street, New York, New York, a block away from Pepe

Giallo.  (Antolini Decl. ¶ 12.)[3]  Plaintiff suffers from Ataxia, among other illnesses, and has

been disabled and in a wheelchair for decades.  (*Id*. ¶¶ 4–6.)  Plaintiff visited Pepe Giallo in

August 2019 and could not enter the restaurant because the front door was "very high."  (*Id*. ¶¶

8–9.)  There were no employees outside and Plaintiff could not navigate up to the front door to

request use of a temporary ramp.  (*Id*. ¶¶ 10–11.)  The Premises' barriers to entry and access

---

[1] Unless otherwise indicated, the facts in this section are undisputed.

[2] "Pl. 56.1" refers to Plaintiff's Counter Statement of Facts Pursuant to S.D.N.Y. Local Civil Rule 56.1, which incorporates both Defendants' Local Civil Rule 56.1 Statement and Plaintiff's responses.  (Doc. 102.)

[3] "Antolini Decl." refers to the declaration of Plaintiff Dino Antolini filed in opposition to Defendants' motion for summary judgment on November 19, 2021.  (Doc. 101-2.)

were that it purportedly lacked (1) an accessible entrance to the facility; (2) ramps for changes in level greater than one-half inch; (3) maneuvering clearances; (4) an accessible route of at least thirty-six inches; (5) the minimum required maneuvering clearances from which to make a one-hundred-and-eighty-degree turnaround; (6) a service counter of less than thirty-six inches above the finish floor; (7) accessible means of egress in the number required by the code; (8) an accessible pathway, of at least thirty-six inches in width, in front of the restroom area; and (9) sufficient clear floor space and turning radius in the restroom for adequate maneuverability. (Compl. ¶ 22; Pl. 56.1 ¶ 15.)[4]

On November 30, 2020, Plaintiff's expert witness, Billy Chen, R.A. ("Chen"), conducted an interior and exterior survey of the Premises. (Pl. 56.1 ¶ 17.) Chen, a registered architect and the principal of B Chen Architect PLLC, conducted the survey alone. (*Id*. ¶¶ 18–20.) On December 10, 2020, Chen generated a report containing his findings concerning whether the Premises complied with the ADA (the "Chen Report"). (*Id*. ¶¶ 25–26.) His Report states, "The survey consisted of walking around the front façade of the restaurant and the interior public dining area of the restaurant." (Chen Report 1.) It concludes, "the Interior space of the eating establishment does meet the ADA requirements. The only major ADA Issue would [be] the entry into the space, with the main floor being raised 6" above the sidewalk grade." (*Id*. at 3.)

Defendants retained Hany Demetry, R.A. ("Demetry") as an expert witness.[5] (Pl. 56.1 ¶ 40.) On January 12, 2021, Demetry performed a site inspection of the Premises and prepared a

---

[4] "Compl." refers to Plaintiff's Complaint filed on August 15, 2019. (Doc. 1.)

[5] Plaintiff's 56.1 Statement, which implements and adopts or denies the statements in Defendants' initial 56.1 Statement, asserts that "On January 12, 2021, Plaintiff's [sic] retained Hany Demetry, R.A. of Sotir Associates as an expert witness." (Pl. 56.1 ¶ 40.) Plaintiff responds that he agrees with the statement. (*Id*.) Considering Demetry's declaration attests that he was "retained on 1/12/2021 by the defendants to perform an inspection and provide a report," (Demetry Decl. ¶ 9), and the Demetry Report is continuously referenced throughout Defendants' memorandum of law in support of their motion for summary judgment, (*see generally* MSJ), I assume this is a typo and that Demetry was in fact the Defendants' expert witness.

report containing his findings as to whether an ADA-compliant wheelchair ramp is feasible at the front entryway or in a number of other scenarios ("Demetry Report").  (*Id*. ¶¶ 42, 44.)  Demetry concluded that an ADA-compliant wheelchair is not feasible under the current design because such construction would result in an illegal condition.  (*Id*. ¶ 47; *see also* Demetry Report.)

## II.   **Procedural History**

Plaintiff filed the Complaint on August 15, 2019.  (Doc. 1.)  Defendants filed their answer on October 15, 2019.  (Doc. 18.)  On April 14, 2020, I referred the case to Magistrate Judge Robert Lehrburger to assist with resolution of the parties' discovery disputes concerning Plaintiff's multiple requests for Defendants' financial records.  (Doc. 33.)  Then on October 27, 2020, I referred the case to Magistrate Judge Lehrburger to handle general pretrial matters. (Doc. 67.)  Magistrate Judge Lehrburger held three settlement conferences with the parties, which were all unsuccessful.

On November 13, 2020, Plaintiff voluntarily dismissed Defendant Ramon Nieves from the action.  (Doc. 75.)  On March 2, 2021, Defendants filed a motion for summary judgment, (Doc. 88), a memorandum of law in support, ("MSJ")[6], the declaration of Michael Giordano, (Doc. 90), the declaration of Gaspare Villa, ("Villa Decl.")[7], and the declaration of their expert witness, Hany Demetry, along with his attached expert report, ("Demetry Decl.")[8]

On March 18, 2021, Plaintiff filed a letter urging me to deny Defendants' motion for summary judgment outright because Defendants failed to file their Rule 56.1 statement on ECF.

---

[6] "MSJ" refers to Defendants' memorandum of law in support of their motion for summary judgment filed on March 2, 2021.  (Doc. 89.)

[7] "Villa Decl." refers to the declaration of Gaspare Villa filed in support of Defendants' motion for summary judgment on March 2, 2021.  (Doc. 91.)

[8] "Demetry Decl." refers to the declaration of Defendants' expert witness, Hany Demetry, filed in support of Defendants' motion for summary judgment on March 2, 2021.  (Doc. 92.)

(Doc. 93.)  The following day, Defendants acknowledged their mistake, noting technological problems with ECF that day, and electronically filed their Rule 56.1 statement.  (Doc. 95.) Defendants noted that they had successfully emailed Plaintiff's counsel the statement on March 1, 2021.  (*Id*.)  Defendants further urged me to treat Plaintiff's letter as his opposition memorandum to their motion for summary judgment, and therefore grant Defendants' summary judgment motion in full.  (*Id*.)  On March 22, 2021, Plaintiff's counsel stated that he did not see Defendants' email with the Rule 56.1 statement and requested that I not treat his March 18, 2021 letter as Plaintiff's opposition memorandum.  (Doc. 97.)  He requested an extension of time to file his opposition motion in light of his delay in receiving Defendants' Rule 56.1 statement. (*Id*.)  Defendants filed a letter in response later that day.  (Doc. 97.)  On March 29, 2021, I issued an order for Plaintiff to submit a memorandum of law in opposition to Defendants' motion for summary judgment and indicated that I would not deny Defendants' motion for summary judgment on the record then before me.  (Doc. 100.)

On April 19, 2021, Plaintiff filed an opposition memorandum of law, (Pl. Opp.)[9], the declaration of Plaintiff Dino Antolini, ("Antolini Decl."), the declaration and expert report of Plaintiff's expert witness, Billy Chen, ("Chen Decl.")[10], and Plaintiff's Counter Statement of Facts Pursuant to S.D.N.Y. Local Civil Rule 56.1, ("Pl. 56.1").  Defendants filed their reply memorandum of law on May 10, 2021, ("Reply").[11]

On August 15, 2022, Defendants submitted a letter informing me that Plaintiff's counsel, Stuart Finkelstein, entered a guilty plea to one count of mail fraud, 18 U.S.C. §1341, admitting to

---

[9] "Pl. Opp." refers to Plaintiff's opposition memorandum of law filed on April 19, 2021.  (Doc. 101.)

[10] "Chen Decl." refers to the declaration of Plaintiff's expert witness, Billy Chen, R.A., filed in opposition to Defendants' motion for summary judgment on April 16, 2021.  (Doc. 101-3.)

[11] "Reply" refers to Defendants' reply memorandum of law in support of their motion for summary judgment filed on May 10, 2021.  (Doc. 104.)

his filing of fraudulent lawsuits in the Southern District of New York and elsewhere.  (Doc. 110

(citing *United States v. Stuart Finkelstein*, 21-cr-217 (PGG)).)  Defendants requested that I order

Finkelstein to submit a letter indicating whether the admitted underlying conduct connected to

his guilty plea related to the instant action and whether new counsel would appear on behalf of

Plaintiff.  (*Id.*)  On August 23, 2022, Finkelstein submitted a letter stating that his admitted

criminal conduct was unrelated to the instant matter and informing me that he had not been

suspended or barred from practicing law and would therefore remain counsel in this action.

(Doc. 112.)  On August 24, 2022, I ordered Finkelstein, on or before November 22, 2022, to file

a status update detailing the sentence in his criminal case and any sentencing terms related to this

case and Finkelstein's practice of law in this District.  (Doc. 113.)  As of the date of this filing,

Finkelstein has not notified me of any suspension or prohibition on his practice of law.

### III.   <u>Legal Standards</u>

Summary judgment is appropriate when "the parties' submissions show that there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P.

56(a).  "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit

under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be

counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of

establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the

nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at

256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Additionally, in considering a summary judgment motion, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation and internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

IV.     **Discussion**

      A.     *Standing*

Defendants argue that Plaintiff does not have standing to bring his ADA claims because he did not suffer a concrete and particularized injury caused by Defendants that could be redressed, and that Plaintiff fails to show a risk of future harm.  (MSJ 8–11.)

"Standing is an essential and unchanging component of the case-or-controversy requirement of Article III."  *Access 4 All, Inc. v. Trump Int'l Hotel and Tower Condo*., 468 F.Supp.2d 160, 167 (S.D.N.Y. 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "There are three well-settled constitutional standing requirements:  (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) the injury must be likely to be redressed by a favorable decision.  *Id*. (citing *Field Day, LLC v. County of Suffolk*, 463 F.3d 167 (2d Cir. 2006)).  "In the context of the ADA, awareness of discriminatory conditions, and the avoidance of a public accommodation because of that awareness, is injury in fact."  *Access 4 All, Inc*., 468 F.Supp.2d at 167.  The Supreme Court has made clear that to "establish standing for an injunction, a plaintiff must not merely allege past injury, but also a risk of future harm."  *Id.* (citing *Lyons v. City of Los Angeles*, 461 U.S. 95, 101–02 (1983).  For ADA claims, a plaintiff must "show a plausible intention or desire to return to the place [of the injury] but for the barriers to access."  *Id*. at 168 (quoting *Disabled in Action of Metro. New York v. Trump Int'l Hotel & Tower*, No. 01 CIV. 5518 (MBM), 2003 WL 1751785, at *7 (S.D.N.Y. Apr. 2, 2003)).

Plaintiff attests that he attempted to access the Premises in August 2019 but was unable to gain entry.  (Antolini Decl. ¶¶ 8–9.)  He explains that he could not enter due to the high

barrier[12] and the absence of any employees outside to provide him with a temporary ramp that likely still would not have allowed him entry.  (*Id.* ¶¶ 10–11.)  Importantly, Plaintiff also attests that he wants and intends "to visit the facility as soon as possible," but he cannot do so until Defendants "fix the violations."  (*Id.* ¶ 17.)  Plaintiff also notes his home's proximity to Pepe Giallo, his Italian-American heritage and love for Italian restaurants in New York City, and his frequent pastime of dining out with his wife.  (*Id.* ¶¶ 12–14.)  Viewing Plaintiff's declaration and the other evidence in the light most favorable to Plaintiff, *Allen*, 64 F.3d at 79, it is reasonable to infer that Plaintiff suffered an injury when he could not enter the Premises in August 2019 and he has an "intention or desire to return" to Pepe Giallo, but cannot due to "the barriers to access," *Access 4 All, Inc.*, 468 F.Supp.2d at 168.  *See also Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013) (plaintiff's showing that (1) a high step deterred him from entering the diner, (2) he often frequents neighborhood diners, (3) he lives near the diner, and (4) he would like to visit the diner if he were able to access it were sufficient to establish standing for an ADA claim).

I find Plaintiff's presented evidence sufficient to establish standing to assert his ADA claims.

---

[12] The parties continuously refer to the "barrier" that made the Premises inaccessible for Plaintiff.  The ADA does not define the term "barrier," *see* 42 U.S.C. § 12181, but courts in this Circuit construe barriers under the ADA to mean an obstruction or condition that denies the plaintiff "a full and equal opportunity to enjoy the services defendants provide."  *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008); *see also Maury v. Ventura in Manhattan, Inc.*, 544 F. Supp. 3d 396, 403 (S.D.N.Y. 2021) (holding that plaintiff sufficiently pled an ADA violation by establishing barriers existed that "made and continue to make plaintiff's shopping experience more difficult and more time-consuming than what an able-bodied patron experiences" (citing *Camarillo*, 518 F.3d at 156)); *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 203 (S.D.N.Y. 2016) (holding that the sales and service counters lack[ed] an accessible portion of the counter" for wheelchair-bound individuals and constituted barriers); *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013) (holding that the plaintiff adequately pled that a step that deterred him from entering the business constituted a "barrier" pursuant to the ADA).  Based on the photographs submitted in accordance with both parties' expert witness reports, it appears this "barrier" refers to a step that leads to Pepe Giallo's front entrance door.  (*See* Chen Report, Demetry Report.)

9

### B. *Plaintiff's ADA Claims*

Title III of the ADA prohibits discrimination against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . ." 42 U.S.C. § 12182(a).  A Title III claim requires that a plaintiff establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA.  *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008).  Neither party seems to refute that Plaintiff has satisfied the first two prongs.  The remaining question, then, is whether Defendants discriminated against Plaintiff within the meaning of the ADA.  *Id.*

"The ADA describes discrimination in both general and specific terms." *Id.*  Two provisions of the ADA that define "discrimination" are relevant to Plaintiff's Complaint.  First, "discrimination includes a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id.* at 368–69 (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)) (internal quotation marks omitted).  To combat the second form of discrimination within the meaning of the ADA, any alteration made to a public accommodation after January 26, 1992 "shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." *Roberts*, 542 F.3d at n.2 (citing 28 C.F.R. § 36.402(a)).

### 1.  "Readily Achievable" Removal of the Barrier

"[T]he ADA requires removal of architectural barriers, regardless of whether alterations have been made, 'where such removal is readily achievable.'" *Roberts*, 542 F.3d at 367 (citing

42 U.S.C. § 12182(b)(2)(A)(iv)).  "[R]eadily achievable means easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  To assert a claim, the plaintiff must "articulate[] a plausible proposal for barrier removal, the costs of which, facially, do not clearly exceed its benefits."  *Kreisler*, 731 F.3d at 189 (quoting *Roberts*, 542 F.3d at 373, 378).  Once the plaintiff clears that hurdle, "the burden shifts to the defendant to prove that the proposals were not readily achievable."  *Id*. (internal quotation marks omitted).  In meeting this burden, "[n]either the estimates nor the proposal are required to be exact or detailed, for the defendant may counter the plaintiff's showing by meeting its own burden of persuasion and establishing that the costs of a plaintiff's proposal would in fact exceed the benefits."  *Roberts*, 542 F.3d at 373.  "Readily achievable" is a broad concept and "either party may include in its analysis, as costs or benefits, both monetary and non-monetary considerations."  *Id*.  However, a plaintiff "must provide at least some estimate of costs."  *Kreisler v. Second Ave. Diner Corp*., No. 10 CIV. 7592 RJS, 2012 WL 3961304, at *7 (S.D.N.Y. Sept. 11, 2012), *aff'd*, 731 F.3d 184 (2d Cir. 2013) (emphasis omitted).

 Plaintiff has failed to meet this burden.  Plaintiff's expert report does not provide any analysis or proposal, let alone any type of evaluation of the costs and benefits.  (*See generally* Chen Report.)  The Report simply states, "[t]here should be a handicap ramp on the exterior of the building."  (*Id*. at 2.)  Nowhere in the Report does Chen mention taking any measurements or performing any type of evaluation or assessment of potential proposals to remove the barrier to entry.  Instead, it states that the inspection "consisted of walking around the front façade of the restaurant and the interior public dining area of the restaurant."  (*Id*. at 1.)  Moreover, the Report makes no mention of costs whatsoever.[13]

---

[13] Plaintiff attempts to cure these deficiencies by attaching a second affidavit from Plaintiff's expert witness, Billy

Even if Plaintiff had met his burden, there is no genuine issue of fact as to whether removal of the barrier would be readily achievable.  *See Kreisler*, 731 F.3d at 189.  It undoubtedly would not.  Defendants submit the Demetry Report in support of their argument that there is no way to legally construct a handicap ramp to enter the Premises.  Demetry attests that, as a New York State licensed architect, he has expertise in zoning and code analysis, architectural planning, ADA design and compliance retrofitting, and structural design, as well as all types of related filing and expediting with the New York City Department of Buildings.  (Demetry Decl. ¶ 2.)  He is also familiar with the New York City Building Code and Fire Code, local zoning resolutions, Landmark Preservation Commission rules, Department of Transportation ("DOT") rules, and ADA standards.  (*Id.* ¶ 4.)

Demetry's inspection consisted of "exterior and interior inspection of the site, documenting all façade and sidewalk measurements, needed to prepare plans and construct the

---

Chen, to the opposition memorandum.  (Doc. 101-3.)  Chen's second declaration was executed on April 16, 2021—over a month after Defendants filed their motion for summary judgment and just days before Plaintiff filed his opposition memorandum—or, in other words, in the middle of summary judgment briefing.  Chen states in the second affidavit that he took measurements during his inspection of the Premises and offers a cost estimate and configuration for ADA compliance.  (*Id.*)  However, Chen's initial declaration explained his inspection "consisted of walking around the front façade of the restaurant and the interior public dining area of the restaurant," (Chen Report 1), and did not include any measurements, analysis, evaluation, cost estimate, or proposal for ADA-compliant configuration.  "It is well-settled in this Circuit that 'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous[ly submitted evidence].'"  *Acas v. Connecticut Dep't of Correction*, No. CIV 3:06CV1855(JBA), 2008 WL 4479111, at *8 (D. Conn. Sept. 29, 2008) (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)); *see also Mancuso v. Consolidated Edison Co. of N.Y.*, 130 F. Supp. 2d 584, 592 (S.D.N.Y. 2001) (holding that a party cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts . . . .and may not submit self-serving affirmations that contradict prior testimony asserted in depositions, interrogatories, and affidavits").  Additionally, Defendants state that neither this affidavit, nor any of the information contained therein, was disclosed to them during discovery or afterwards.  (Reply 4–7.)  "Federal Rule 26(e)(1)(A) require[s] Plaintiff to supplement his discovery responses when he "learn[s] that in some material respect the disclosure or response [wa]s incomplete or incorrect," or else to confirm that "the additional or corrective information ha[d]. . . otherwise been made known to [Plaintiff] during the discovery process or in writing."  *Acas*, 2008 WL 4479111, at *10.  "This failure alone could justify excluding the[] affidavit[]."  *Id.*  Thus, "in light of the self-serving nature of this declaration, I afford the declaration and these newly submitted statements no weight."  *Martell Strategic Funding LLC v. Am. Hosp. Acad.*, No. 12-CV-627 (VSB), 2019 WL 632364, at n.23 (S.D.N.Y. Feb. 14, 2019).  Even if I were to consider this affidavit, it would not change my analysis that removal of the barrier is not readily achievable.  (*See infra* Section IV.B.1.)

required ramp." (Demetry Report 1.)  With his Report, he included "[d]etailed plans with clear measurements," "[s]uggested ramp scenarios with comments and recommendations," "[s]upporting photos to clarify our recommendations," and "[r]ecord NYC DOT approved plans for sidewalk seating." (*Id.*)  Through his inspection of the Premises, Demetry found that (1) the restaurant space is raised six and seven-eighth inches above the sidewalk with concrete steps from the adjacent building projecting twenty-one inches onto the sidewalk, (2) resulting in a seven-foot-and-seven-inch distance between the restaurant entryway and adjacent concrete step of the next-door school, along with (3) a fourteen-foot tree and tree bed located in front of the Premises at the edge of the sidewalk, and (4) an immovable cellar hatch door immediately to the left of the restaurant entry. (*Id.* ¶ 15.)  He also noted that the Premises had a notification bell and clear sign at the front façade to provide a movable accessible ramp to the restaurant. (*Id.* ¶ 16.)  To assess whether construction was achievable, Demetry included a proposed architectural drawing depicting a potential wheelchair ramp in the existing space. (*Id.* ¶ 17; *see* Demetry Report 3.)  He found that, considering the requirement that a permanent platform landing for wheelchair accessibility is five-by-five-feet, the Premises would require an additional two-foot concrete platform for the existing platform. (*Id.* ¶ 18.)  The additional two-foot concrete platform "would interfere and obstruct the fire escape landing for the residential units above," resulting in a violation of the New York City Building Code and Fire Codes, which requires that a "fire escape must land on a flat landing." (*Id.*)

Demetry included in his Report two additional potential scenarios for a wheelchair ramp. (*Id.* ¶ 19; Demetry Report 4–5.)  First, he analyzed whether an ADA-compliant ramp constructed directly from the entryway was feasible. (*Id.* ¶ 20; Demetry Report 4.)  To satisfy the maximum slope for ADA-compliant ramps, the ramp would have to be seven feet long. (*Id.*)  Such a ramp

would still obstruct the fire escape landing in violation of the New York City Building and Fire Codes. (*Id*.) This construction would also result in a less-than-eight-foot clearance between the ramp, its railing, and the tree bed and thus violate DOT regulations that require a minimum clearance of eight feet. (*Id*.) Second, Demetry attempted a model in which Defendants would enlarge the fire escape platform. (*Id*. ¶¶ 21–23; Demetry Report 5.) That scenario would result in a less-than-twelve-inch clearance between the ramp and the adjacent concrete steps in violation of both DOT and ADA regulations. (*Id*.) This would also violate the DOT's required conditions for Defendants' outdoor seating permit and cause Defendants to lose at least four outdoor seats. (*Id*.)

Every plausible ADA-compliant scenario considered by Demetry presents nonconforming situations that violate a city or federal law or both. Notably, Plaintiff does not refute Demetry's findings that construction would result in an illegal condition. This is independently fatal to Plaintiff's ADA claim. In other words, putting aside Plaintiff's failure to meet its burden to "articulate[] a plausible proposal for barrier removal, the costs of which, facially, do not clearly exceed its benefits," *see Kreisler*, 731 F.3d at 189, Demetry's expert findings rebut any potential claim that removal of the barrier is readily achievable. Therefore, as a matter of law, there is no readily achievable way to remove the barriers to entry.[14]

---

[14] I note that Plaintiff states in his declaration that "[e]ven if there was a temporary ramp, which there was not, [he] could not have used it because in [his] experiences as a New York City wheelchair user for many years means [he has] to wait outside for hours just to hope the restaurant has the staff available to bring out the ramp." (Antolini Decl. ¶ 11.) He attests that staff "have to know what they're doing which actually happens a lot where they don't" and the "ramps are also very unsafe and unsteady and can make things worse." (*Id*.) These generic assertions about hypothetical restaurants are woefully insufficient. In addition, nowhere in his Complaint or opposition memorandum does Plaintiff make any type of argument that Defendants' temporary ramp setup violates the ADA. Based on Plaintiff's declaration and Defendants' evidence that shows that Pepe Giallo did have a temporary ramp setup and procedure, (*see* Demetry Decl ¶ 16; Villa Decl. ¶¶ 10–13, Ex. B), I assume Plaintiff simply chose not to utilize the temporary ramp for reasons other than ADA noncompliance.

## 2. Alterations

The second condition to avoid discrimination under the ADA applies to any alterations made to a public accommodation after January 26, 1992. The ADA requires that alterations "shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." *Roberts*, 542 F.3d at n.2 (citing 28 C.F.R. § 36.402(a)). "To establish the existence of an alteration, a plaintiff fulfills his or her initial burden of production by identifying a modification to a facility and by making a facially plausible demonstration that the modification is an alteration under the ADA. The defendant then bears the burden of persuasion to establish that the modification is in fact not an alteration." *Id.* at 371. If the plaintiff establishes an alteration has been made, the plaintiff then bears the initial burden of production to identify "some manner in which the alteration could be, or could have been, made 'readily accessible and usable by individuals with disabilities, including individuals who use wheelchairs.'" *Id.* at 372. The defendant then "bears the burden of persuading the factfinder that the plaintiff's proposal would be 'virtually impossible' in light of the 'nature of the facility.'" *Id.*

Plaintiff alleges that "at some time after January 1992, defendants made alterations to 195 10th Avenue, including areas adjacent and/or attached to 195 10th Avenue" and, through those alterations, Defendants "failed to make their place of public accommodation accessible to Plaintiff, and others so situated" in violation of the ADA. (Compl. ¶¶ 14, 39–43.) Plaintiff asserts in his opposition memorandum that "Defendants have provided materials that indicate that both the entrance of the building as well as the non-complaint [sic] door and 1 inch sil [sic] have been renovated since 1992." (Pl. Opp. 27.) Plaintiff points to a section called "Building History" at page 1 of the Demetry Report. (*Id.*) There is nothing in this section—and Plaintiff

points to no other evidence—demonstrating that alterations occurred or, even if they had, what features of the Premises were altered, when they were altered, or how they were altered. (Demetry Report 1; *see also* 28 C.F.R. § 36.402(a).)  Nonetheless, even if Plaintiff had met his burden, Plaintiff offers no proposal identifying how the alteration could have been "readily accessible and usable by individuals with disabilities, including individuals who use wheelchairs." *Roberts*, 542 F.3d at 372 (internal quotation marks omitted).  As discussed *supra*, Defendants could nonetheless rebut any proposal through their expert witness's showing that any proposal would result in nonconforming and illegal construction and thus be "virtually impossible in light of the 'nature of the facility." *Id.*

Accordingly, Plaintiff's claims that Defendants have not complied with Title III of the ADA must be dismissed.

### C.    *Plaintiff's State Law Claims*

Section 1367(c)(3) of title 28 provides that district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367.  Whether to exercise supplemental jurisdiction "is within the sound discretion of the district court." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117 (2d Cir. 2013) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988)).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari v. New York-Presbyterian Hosp*., 455 F.3d 118, 122 (2d Cir. 2006) (citing *Cohill*, 484 U.S. at 350 n.7); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

In addition to his ADA claims, Plaintiff asserts NYSHRL, NYSCRL, NYCCRL, and common law negligence claims.  (*See* Compl.)  Because I am dismissing Plaintiff's federal claim, the balance of factors counsel in favor of declining supplemental jurisdiction.  Allowing Plaintiff to pursue its state law claims in state court would "avoid needless decisions of state law by this Court, which also promotes the interests of comity and justice."  *Moran v. Tryax Realty Mgmt, Inc*., No. 15 Civ. 8570, 2016 WL 3023326, at *4 (S.D.N.Y. May 23, 2016) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)) (internal quotation marks omitted).

Therefore, I decline to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to § 1367(c).  Plaintiff's state law claims are accordingly dismissed without prejudice to their being refiled in state court.

## V.  <u>Conclusion</u>

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's claims are dismissed in their entirety.

The Clerk's Office is respectfully directed to terminate the open motion at Document 88, and close the case.

SO ORDERED.

Dated: September 13, 2022
       New York, New York

Vernon S. Broderick
United States District Judge